[No. A065291. First Dist., Div. Two. July 14, 1995.]

LAW OFFICES OF STANLEY J. BELL, Plaintiff and Appellant, v. SHINE, BROWNE & DIAMOND et al., Defendants and Respondents.

1012

**COUNSEL**

Stanley J. Bell and Edward J. Niland, Jr., for Plaintiff and Appellant.

Shine, Browne & Diamond, Craig A. Diamond and Joseph J. Appel for Defendants and Respondents.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

This is an appeal from a judgment of the San Francisco Superior Court entered after respondents' demurrer to the appellant's complaint was sustained without leave to amend. The case presents the issue of whether a 1993 order of the Nevada County Superior Court, entered in an minor's personal injury action, and purporting to deny appellant's quantum meruit lien claim for attorney fees in that action, bars a subsequent declaratory relief action with respect to entitlement to those fees. On the facts before us, we hold that it does and hence affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The history of this attorney fee dispute starts on January 24, 1992, when Korie Rekers, a minor, was injured in a head-on automobile collision in Nevada County. A guardian ad litem was appointed for her and, in March of 1992, he retained the Nevada City firm of Shine, Browne & Diamond (Shine firm), one of the respondents herein, to represent her in an action for

damages for personal injuries. This agreement was approved by the Nevada County Superior Court on April 9, 1992.[1]

Also in April of 1992, the Shine firm entered into a contract with appellant here, the Law Offices of Stanley J. Bell, a Professional Corporation, of San Francisco (Bell). Bell was, by this agreement, associated in the representation of the minor and was apparently to receive two-thirds of the attorney fees with the Shine firm receiving the remaining one-third.[2] Bell never had a fee agreement directly with the guardian ad litem.

Throughout the remainder of 1992 Bell apparently performed certain services in the Rekers action; it is conceded by both parties that Bell expended slightly under $17,000 in litigation expenses during that period of time. Respondent Joseph J. Appel (Appel), one of Bell's employees, worked on the action during this period. However, on December 31, 1992, Appel left Bell's employ and opened his own practice in San Francisco. Shortly thereafter, he was substituted in place of Bell as associate counsel in the Rekers action, a substitution which Bell approved. Within days thereafter, however, on January 25, 1993, Bell filed a document entitled "Lien for Attorneys Fees and Costs and Request for Special Notice" in the Rekers case in the Nevada County Superior Court. By it, he claimed a "first lien for legal costs, attorneys fees *quantum meruit* and for any other compensation that may be claimed to be determined at the time of the settlement, other disposition, or any other appropriate time in the [Rekers] case . . . ."

After the filing of this document, the two sets of attorneys proceeded to exchange correspondence on the subject of Bell's purported lien claim.[3] The correspondence apparently commenced with three letters in May and June of 1993 from the Shine firm to Bell requesting various information with respect to the quantum meruit fees claimed by the latter. Bell apparently answered only the last of these letters via a letter of June 14.[4] In it Bell asserted, inter alia, that it was "premature" to discuss his claim for fees and, for that and various additional reasons, he declined to respond with the specifics requested.

---

[1]Although the contract is not a matter of record in this case, the parties agree that it provided for a contingent fee of 25 percent to be paid from the gross proceeds of any settlement or verdict, and also provided that the Shine firm could associate any other attorney or attorneys so long as such association did not increase the total attorney fees payable. There is nothing in either the record or in the parties' briefs as to whether the agreement expressly provided for an attorneys' lien.

[2]This agreement is also not included in the record in this appeal.

[3]With one exception, the correspondence is not in the record before us. Most of the description in the text is derived from respondents' petition to compromise the Rekers claim and from the subsequent Nevada County Superior Court order.

[4]All dates hereafter are in 1993.

Apparently two other letters were sent by the Shine firm to Bell, both in June and both allegedly reiterating the request for detailed information with respect to the attorney fees claim and advising that the Shine firm would petition the court to have the attorney fees claim "denied in its entirety" unless the information was received by a certain date. The final letter allegedly stated that the Shine firm "would proceed under the assumption that the Law Offices of Stanley J. Bell was waiving its claim for any attorneys fees in this action."

True to their word, on September 17 respondents, on behalf of the guardian ad litem, filed and served upon Bell a petition under Code of Civil Procedure section 372 for a court order authorizing the compromise of the Rekers claim. Paragraph 12 of the petition set forth, in seven subparagraphs, the history of the fee dispute with Bell (or at least that history from respondents' viewpoint). This portion of the petition concluded: "Based upon the failure to provide the requested information by the Law Offices of Stanley J. Bell, and further based upon Petitioner's expressed assumption that the Law Offices of Stanley J. Bell would be waiving its asserted attorney fee *quantum meruit* lien claim, the asserted attorney fee *quantum meruit* lien claim of the Law Offices of Stanley J. Bell is respectfully requested to be denied in its entirety." The petition recited a hearing date of October 4.[5]

Clearly by way of a defensive response, on September 28 Bell filed two documents, a "Memorandum of Points and Authorities Re Petition under CCP § 372 for Order Approving Compromise of Minor's Claim" and a supporting declaration in the Nevada County action. In the former document, after briefly outlining the basis of the dispute, Bell cited two cases[6] and then stated: "The above cases make it very clear that the Court in this action has no jurisdiction to deny the Law Offices of Stanley J. Bell its *quantum meruit* attorney fee as that is an issue that must be determined in a separate, independent action." In the second document, and obviously intending to deflect the "waiver" claim in the September 17 petition, Bell recited that he had read that petition and then stated: "At no time has the Law Offices of Stanley J. Bell either expressly or impliedly waived its right to its *quantum meruit* attorney fee in this action." To this declaration was attached yet another copy of his January 25 "lien."

---

[5]The petition included a request for the reimbursement of the costs of all the attorneys involved, including almost $17,000 to Bell; this request was approved.

[6]*Hansen* v. *Jacobsen* (1986) 186 Cal.App.3d 350 [230 Cal.Rptr. 580]; *Valenta* v. *Regents of University of California* (1991) 231 Cal.App.3d 1465 [282 Cal.Rptr. 812]. (As to both, see *post*.)

On October 1, Bell filed the present action in San Francisco Superior Court seeking declaratory relief as to his claim for the reasonable value of his efforts in the Rekers case.[7]

The dispute then shifted from the pleading front to the courtroom. On October 4, the Nevada County Superior Court convened a hearing on respondents' petition to compromise the Rekers claim. Bell was represented by counsel who appeared (generally, not specially) "for the lien claimant."

The court initially indicated that it anticipated reaching the issue of the lien claim, whereupon Bell's counsel asserted, "as the Points and Authorities set forth . . . this court has [no] jurisdiction to make an order with respect to the attorney fees." Counsel expanded on this argument by noting that there was nothing in the petition indicating what the division should be between the two law offices then representing the tort plaintiff and, similarly, "there should not be included within this order that the former attorney's law offices of Stanley J. Bell should be denied their fee. That has to be decided in a separate action."

The court expressed some concern that, if it deferred a hearing on the Bell attorney fees issue, such a defense might delay action on the entire petition to the detriment of the minor. Bell's counsel responded that Bell understood that his "recourse is against the attorneys." The following interchange then took place:

"THE COURT: So then he is not claiming that he has any recourse against the funds distributed to the trust on behalf of the minor; is that correct?

"[Bell's Counsel]: Our recourse is against the attorneys.

"THE COURT: Then your lien claim is restricted to that portion of the funds that are awarded as attorney fees?

"[Bell's Counsel]: Correct."

After this interchange, Appel argued (as had his petition for the guardian ad litem) that there had been numerous unanswered requests of Bell with respect to the specifics of his quantum meruit attorney fees claim and that it would be "prejudicial" to the guardian to leave this issue unresolved.

Soon afterward Bell's counsel ceased using the term "lien claim" to describe the relief her client was seeking. She argued instead: "Technically a

---

[7]There is nothing in the record to indicate whether this complaint had been served by the time of the October 4 hearing in Nevada City.

lien claim is somewhat of a misnomer . . . . The claim of Stanley Bell is technically not a lien claim. They are entitled to quantum meruit attorney fees. It has to be determined in a separate action, what each attorney who has done work on the case has done." Still later, she said: "We would have no objection to your approving the settlement today and taking under submission the issue of [sic] lien claim."

Two days after the October 4 hearing, the Nevada County Superior Court entered its "Order Authorizing and/or Approving Petition Under Code of Civil Procedure § 372 for Compromise of Minor's Claim." That order, which the court directed to be prepared by respondents,[8] included one long paragraph ([¶] 11) which essentially repeated the factual recitations contained in paragraph 12 of the September 17 petition. The order then stated: "The lien claim for quantum meruit attorney fees submitted by lien claimant be and hereby is DENIED with prejudice. This court has sole jurisdiction over the issue of attorney fees awarded in connection with the claim of a minor, such as plaintiff herein. [Citations.] The lien claimant knowingly, deliberately and voluntarily submitted to this Court a lien for quantum meruit attorney fees. The lien claimant knowingly and deliberately acknowledged in writing this Court's jurisdiction to determine the extent of attorney fees to be awarded by this court by way of a Petition for Compromise. See, lien claimant's letter dated June 15, 1993. Lien claimant failed on numerous occasions to inform Petitioner herein prior to settlement the amount and basis for any quantum meruit attorney fee award. Petitioner was therefore prejudiced by a lack of said information. Based upon the failure to provide the requested information by lien claimant and further based upon Petitioner's expressed written assumption that lien claimant would be waiving its asserted attorney fee quantum meruit lien claim in the absence of information, and further based upon the lack of any competent evidence submitted by lien claimant to support this court's award for quantum meruit attorney fees to be assessed against the proposed settlement, and further based upon principles of equity and fair play, the asserted attorney fee quantum meruit lien claim of lien claimant is denied with prejudice and is therefore, expunged from the record on file herein."

No appeal was taken from this order.

The battle then shifted to the San Francisco Superior Court. Respondents demurred to appellant's October 1 complaint on the basis of res judicata and

---

[8]On October 4, the court issued a "Ruling on Submitted Matters" which, among other things, ruled that the "purported lien" by Bell "is ordered expunged" and directing respondents to prepare a formal order.

collateral estoppel and, after briefing and oral argument, that court sustained the demurrer without leave to amend. Judgment was entered on that order but appellant returned to the fray a short time later with a motion for a new trial or for an order vacating the judgment, a motion which was likewise denied.

On both occasions, the San Francisco Superior Court relied upon the Nevada County Superior Court's October 6 order and concluded that the action before it was, as a consequence of that order, barred. This appeal followed.

## III. DISCUSSION

### A. *The Nevada County Superior Court Acted in Excess of Its Jurisdiction.*

Before considering the jurisdiction of the Nevada County court to enter the challenged order, two preliminary points need to be made: in the first place, the purported "lien" document filed by Bell on January 25 had at least two things wrong with it: (1) it was mislabeled (the proper term for such a document is "Notice of Lien"; see *Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d at p. 357) and (2) Bell had no lien with respect to the Rekers settlement.

■ On the latter point, the law is clear that the only circumstance under which an attorney can claim an attorneys' lien with respect to a future award or settlement is when he has a contract directly with the client which either expressly or impliedly provides that he is to share in that award or settlement. (See *Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d at p. 355; *Trimble* v. *Steinfeldt* (1986) 178 Cal.App.3d 646, 651-652 [224 Cal.Rptr. 195].) It is undisputed that Bell had no such agreement; indeed, he admits as much in his opening brief to this court.

■ However, even if Bell had a valid lien with respect to the Rekers settlement, the Nevada County Superior Court had no jurisdiction to determine the reasonable amount of attorney fees to be awarded him. This was and is the clear holding of the two cases Bell cited to the Nevada County Superior Court (see footnote 6, *ante*) and several others. For example, in the leading case on how and in what forum an attorneys' lien is enforced, *Bandy* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 234 [126 Cal.Rptr. 890], Division One of this court stated: "A contractual lien must be enforced, however, in an independent action by the attorney against the client and the attorney has no right to intervene in the main action to which he is not a party. [Citations.] Any order or judgment granting the attorney

fees made in the main action is in excess of the court's jurisdiction and is void. [Citation.]" (See also *Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d at p. 356; *Hendricks* v. *Superior Court* (1961) 197 Cal.App.2d 586 [17 Cal.Rptr. 364].)

In *Valenta* v. *Regents of University of California, supra,* 231 Cal.App.3d at page 1470, the court expanded on this: "Clearly, the practice of filing a notice of lien in a pending action is permissible, and even advisable. . . . However, while a previously discharged attorney may file a notice of lien in a pending action, an independent action is required to establish the existence and amount of the lien and to enforce it. [Citations.] [¶] It is apparent, then, that the lower court lacked jurisdiction to enter an order beyond that permitting the filing of a notice of lien in the pending action."

The *Valenta* court added that neither the filing of the "Notice of Lien" in that case nor a subsequent motion to strike it created the necessary jurisdiction. (*Valenta* v. *Regents of University of California, supra,* 231 Cal.App.3d at p. 1469.) Just so here: assuming, arguendo, that Bell ever had a valid lien, neither its filing, its "reaffirmation" by Bell, nor the petition filed by respondents seeking to expunge it, vested the Nevada County Superior Court with any jurisdiction to do anything with respect to the fee dispute between these parties.

Respondents argue that, although this may be the rule with respect to cases involving adults, because Probate Code sections 3600 and 3601 and Code of Civil Procedure section 372 vest in the probate court exclusive jurisdiction to approve attorney fee requests in actions involving minors, such as the Rekers case, the rule is somehow different in such cases. They are wrong. The cases they principally rely upon, *Ojeda* v. *Sharp Cabrillo Hospital* (1992) 8 Cal.App.4th 1, 17 [10 Cal.Rptr.2d 230] and *Schneider* v. *Friedman, Collard, Poswall & Virga* (1991) 232 Cal.App.3d 1276, 1280, fn. 4 [283 Cal.Rptr. 882], stand only for the proposition that a probate court having jurisdiction under the aforementioned code sections over the compromise of a minor's personal injury action may enter an award for reasonable attorney fees in that action. By so doing, however, that court does not acquire jurisdiction over any fee dispute between two attorneys quarreling over division of the fee to be awarded, much less one involving an attorney who had no agreement with the guardian ad litem in the first place.

This distinction was made clear in the recent case of *Goldberg* v. *Superior Court* (1994) 23 Cal.App.4th 1378, 1383 [28 Cal.Rptr.2d 613], a case involving a fee dispute between a chiropractor who treated several personal

injury minor plaintiffs, and who had a contract specifically giving him lien rights as to any recovery, and the guardians ad litem for the minors. The latter objected to Dr. Goldberg's claimed fees and attempted to use the Probate Code section 3601 approval hearing as a vehicle to litigate the reasonableness of those fees. Dr. Goldberg specially appeared only at that hearing, objected to the jurisdiction of the superior court purportedly hearing the issue, and then both appealed and petitioned for a writ of mandate with respect to a subsequent order of that court purporting to find the reasonable value of his fees.

The Court of Appeal granted the writ of mandate and vacated the trial court's order. In so doing, it clarified the power of a superior court under Probate Code section 3601: "Our conclusion that the court has authority to determine what expenses are paid out of the minors' settlement and what are not does not mean the court has jurisdiction to decide what Dr. Goldberg 'deserves.' Section 3601 expressly permits the court to decide what reasonable expenses it will allow to be paid from the minor's settlement. It does not permit the court to decide the reasonable value of a practitioner's services. [¶] The reasonableness and propriety of the contract amount is another question entirely, a question that must be resolved by a separate action. It is not a matter to be decided under section 3601 and certainly not by the irregular mini-trial we saw in this case. In short, section 3601 is exclusively concerned with allowing expenses to be paid from the minor's settlement. It has no effect on the claims Dr. Goldberg may have against the parents or lawyers under the contracts or otherwise." (*Goldberg* v. *Superior Court, supra,* 23 Cal.App.4th at p. 1383, fn. omitted.)

The rule enunciated in *Goldberg* applies here.

B. *Notwithstanding the Nevada County Court's Action in Excess of Its Jurisdiction, Appellant Is Barred From Collaterally Attacking Its Order*

The fact that the Nevada County Superior Court acted in excess of its jurisdiction does not end matters. Respondents assert, and we agree, that three separate and distinct principles nevertheless bar appellant from contesting both the jurisdiction of that court and the force and effect of its order of October 6. We refer to the principles of estoppel, disfavor of collateral attack, and res judicata.

Before discussing these principles and their applicability here, it is important to identify with particularity the nature of the jurisdictional defect of the Nevada County order. It is not, as appellant argues, subject matter jurisdiction. The Nevada County court was clearly competent to rule on an attorney

fee dispute of the sort involved here. Nor, of course, was the issue one of jurisdiction over the person. Rather, the type of jurisdictional error implicated here was an action of the court (issuance of the October 6 order) "in excess of jurisdiction"; this jurisdictional issue is one separate and distinct from the other two, better known, jurisdictional problems.

Our Supreme Court carefully distinguished between these types of jurisdiction in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]. There, the court explained: "[I]n its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. For the purpose of determining the right to review by *certiorari*, restraint by prohibition, or dismissal of an action, a much broader meaning is recognized. Here it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Id.* at p. 288.) Further on, the court added: "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari*." (*Id.* at p. 291; see also 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 220 et seq., pp. 607-610.)

It is precisely this type of jurisdictional infirmity that is involved here. For example, in *Bandy* the court expressly stated: "Any order or judgment granting the attorney fees made in the main action is in excess of the court's jurisdiction and is void." (*Bandy* v. *Mt. Diablo Unified Sch. Dist.*, *supra*, 56 Cal.App.3d at p. 234.) And in *Hendricks* v. *Superior Court*, *supra*, 197 Cal.App.2d at page 588, where a litigant sought a writ of prohibition to prevent a trial court from awarding attorney fees to a discharged attorney in the pending personal injury action, the court stated: "For the issuance of prohibition it is not necessary that there be a lack of jurisdiction over the subject matter or the parties in the fundamental sense, but only that there be a want or excess of the power of the court as defined by statutes or by rules developed and followed under the doctrine of stare decisis. [Citation.] [¶] As Attorney Sefton was not a party in the original action any order or judgment therein giving him attorney's fees is in excess of jurisdiction."

Unlike some other jurisdictional defects, a party may, by its conduct, be estopped from contesting an action in excess of jurisdiction. Moreover,

when a direct avenue of attack (such as appeal) is available, collateral attack on a judgment "in excess of jurisdiction" is seldom, if ever, allowed. Finally, the determination of an issue of "jurisdiction to act" (the affirmative side of the "in excess of jurisdiction" coin) is res judicata. (See 2 Witkin, Cal. Procedure, *op. cit. supra*, §§ 266-271, 287, 663-673, 693-694.) We shall deal with these three points in that order.

On the issue of estoppel, it is useful to recapitulate briefly just how much and how often Attorney Bell embraced the Nevada County Superior Court. In summary, he (1) filed a document in that court asserting a lien, (2) refiled that document in the same court nine months later after respondents began suggesting a "waiver" by Bell of his claim, (3) simultaneously, affirmatively represented to that court that he had never waived his claim for fees, (4) raised no objection to that part of the petition filed by respondents requesting, on his behalf, almost $17,000 by way of reimbursement for costs expended in the action, (5) caused a legal associate to appear generally, not specially, in that court,[9] and then (6) never appealed the resulting court order. We hold that these actions, considered together, estop Bell from now contesting the Nevada County court's jurisdiction to act as it did.

A leading case on the application of the doctrine of estoppel as applied to "jurisdiction to act" is *In re Griffin* (1967) 67 Cal.2d 343 [62 Cal.Rptr. 1, 431 P.2d 625], a case in which a criminal defendant attacked, via a writ of habeas corpus, the action of the trial court in revoking his probation *after* the probationary term had expired. The court noted that, under the operative Penal Code provision, the court's power to revoke probation only extended as long as the probationary period itself, but also noted that it was the defendant who had requested a continuance of the critical hearing to a date beyond that period of time. Finally, the court noted a point also crucial in the instant case: the defendant could have, but did not, take a direct appeal from the court order. On these facts, the court held: "When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when '[t]o hold otherwise would permit the parties to trifle with the courts.'" (*Id.* at pp. 347-348; see also *Hudec* v. *Robertson* (1989) 210 Cal.App.3d 1156, 1166

[9]See, with respect to a general versus a special appearance in this context, 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, sections 141, 157, pages 522-524, 541-542.

[258 Cal.Rptr. 868]; *Spahn* v. *Spahn* (1945) 70 Cal.App.2d 791, 795 [162 P.2d 53]; *In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 227-231 [265 Cal.Rptr. 227].)

The "estoppel" principle is particularly compelling where, as here, what is involved is a collateral attack. In this connection, it is noteworthy that Bell clearly had standing to appeal the Nevada County Superior Court order. (See *Valenta* v. *Regents of University of California, supra*, 231 Cal.App.3d at p. 1469, fn. 2; *Trimble* v. *Steinfeldt, supra*, 178 Cal.App.3d at p. 650; *McClearen* v. *Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449].) He did not do so. Witkin suggests that the rule applicable in such a situation should be as follows: "If there is jurisdiction of the subject matter and the parties, one who complains of the act is usually before the court. He has an opportunity to object, or to have the judgment or order reviewed by the usual methods of direct attack, such as new trial or appeal. He may also in many situations use the extraordinary writs of prohibition, mandamus or certiorari to directly attack and prevent or annul the unauthorized act. In brief, there are adequate methods of direct attack on such judgments, and there is almost a presumption of negligence on the part of the aggrieved party who fails to seek these normal remedies and later raises the objection by collateral attack. [¶] If this analysis is sound, acts merely in excess of jurisdiction, by a court having jurisdiction of the subject matter and parties, should not be subject to collateral attack unless exceptional circumstances precluded an earlier and more appropriate attack." (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 266, p. 664.)

The leading case supporting this view is *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715 [285 P.2d 636]. There, an insurance company had been taken over by the Insurance Commissioner and a new company created pursuant to the rehabilitation procedure of Insurance Code section 11525 et seq. Some stockholders sought a writ of mandamus to review the commissioner's approval of the mutualization plan, asserting that the wrong statutory remedy was used. The court denied the writ, ruling that where, as in the case before it, a direct attack could have been had, a collateral attack is impermissible: "It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties. In the consideration of problems arising in this field it should be kept in mind that there is a difference between lack of jurisdiction in the fundamental sense, which is ordinarily essential for collateral attack, and the broader meaning of the term 'lack of jurisdiction' when used in determining the availability of prohibition or certiorari to review an order or judgment. . . . [¶] . . . In the present case, however, it is clear that the court

which approved the rehabilitation agreement had jurisdiction of the subject matter and the parties, and, unless the case comes within some exception, collateral attack cannot be based on the ground that the court authorized mutualization to proceed under the wrong statute." (44 Cal.2d at pp. 725-726.)[10]

In *Frank* v. *Frank* (1969) 275 Cal.App.2d 717, 722 [80 Cal.Rptr. 141], the plaintiff wife received an interlocutory divorce decree which incorporated a property settlement not providing for alimony. However, the decree itself included an alimony award valid " 'irrespective of any remarriage by said plaintiff.' " (*Id.* at p. 718.) Plaintiff remarried and defendant stopped paying alimony in reliance on former Civil Code section 139, which provided that an order for alimony after remarriage was invalid in the absence of a written agreement to that effect. However, the court held the husband's relief was by way of appeal and not later collateral attack: "There can be no question that if defendant *had* raised the point on appeal and had obtained a reversal of the alimony provision in the decree, the trial court, upon remand, would have had the power to award plaintiff a higher monthly sum as alimony, particularly since plaintiff and defendant both testified in the instant proceeding that she had earlier demanded an award of $900 per month and the trial judge in the divorce action seemed doubtful of the wisdom of her decision to accept an alimony award of $700 for a set period of four years. It appears to us that defendant deliberately pursued a strategy which, if successful, would allow him both to have his cake and eat it." (275 Cal.App.2d at p. 723; see also 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, at §§ 267, 271, pp. 665-667, 670-673, and cases cited therein.)

■ Finally, the doctrine of res judicata itself precludes relitigation in the San Francisco Superior Court of the Nevada County Superior Court's assumption of jurisdiction. Inasmuch as the Nevada County court expressly determined its jurisdiction to act with respect to Bell's underlying claim for attorney fees—not just his "lien claim"—this principle likewise obtains. (See *Pacific Mut. Life Ins. Co.* v. *McConnell, supra*, 44 Cal.2d at p. 725; *Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 655-656 [165 Cal.Rptr. 877, 612 P.2d 967]; *Hollywood Circle Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731 [13 Cal.Rptr. 104, 361 P.2d 712]; cf. *Peery* v. *Superior Court* (1985) 174 Cal.App.3d 1085, 1094 [219 Cal.Rptr. 882] [res judicata may even apply to determination of subject matter jurisdiction].)

Here, the "claim" that respondents seek to foreclose in the San Francisco action is Bell's assertion of a right to recover the reasonable value of his

---

[10]The Supreme Court recognized that, under certain circumstances, collateral attack might be allowed, but only where the judgment is contrary to a statute. (*Pacific Mut. Life Ins. Co.* v. *McConnell, supra*, 44 Cal.2d at p. 727.) This, however, is clearly not the situation at hand.

efforts in the Rekers case. Appellant argues that (a) this claim was never actually litigated and determined in the Nevada County action, (b) the issue in that action was only as to his "lien claim" and not as to the underlying issue of his right to recover the quantum meruit value of his fees, and (c) in any event, the guardian ad litem, and not respondents, was his adversary in the Rekers action.

On the first point, appellant is basically arguing that, because there was no *actual litigation* of his claim in the Nevada County action, there was no judgment on the merits, an essential ingredient for res judicata. But the law is clear that *actual litigation* is not necessary as long as there has been "a fair opportunity" to litigate the claim. (See *Schultz* v. *Harney* (1994) 27 Cal.App.4th 1611, 1620 [33 Cal.Rptr.2d 276]; *Nakash* v. *Superior Court* (1987) 196 Cal.App.3d 59, 68 [241 Cal.Rptr. 578].)

On the second point, appellant is simply incorrect that the only issue before the Nevada County court was his "lien claim" and not his underlying right to recover some portion of the attorney fees pursuant to his contract with Shine. The breadth and scope of the October 6 order belies appellant's position. We note in particular the following sentences from that order: "This court has sole jurisdiction over the issue of attorney fees awarded in connection with the claim of a minor, such as plaintiff herein. . . . The lien claimant knowingly and deliberately acknowledged in writing this Court's jurisdiction to determine the extent of attorney fees to be awarded by this court by way of a Petition for Compromise." This language makes it clear that the Nevada County court was convinced it had provided Bell the opportunity to litigate the basic issue of his right to attorney fees in the Rekers case and, therefore, that it had jurisdiction to determine both that issue and the issue of the validity of his lien. If Bell felt that was not the case, he had a clear and direct remedy: an appeal. He voluntarily eschewed that remedy.

On the third point, that the parties were not the same in the two actions, the answer is equally simple. First of all, appellant became a party to the Rekers action when he filed his lien. (See *McClearen* v. *Superior Court*, *supra*, 45 Cal.2d at p. 856.) And, although respondents here were not technically parties in that action, that fact is not significant for res judicata purposes as long as the issue presented was the same, there was a final judgment on the merits, and the party *against whom* res judicata is asserted (here, appellant) is the same. (See *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]; 7 Witkin, Cal. Procedure, *supra*, Judgment, §§ 303-304, pp. 741-743.)

In summary, Bell had a choice: he could have acquiesced in respondents' efforts to have the Nevada County court hear and determine the issue of his right to any fees or he could appeal that court's incorrect ruling with respect to its jurisdiction as to that issue. He did neither. As a consequence, the San Francisco court was correct in not permitting him to reopen the fee dispute before it.

## IV.   DISPOSITION

The order and judgment appealed from are affirmed.

Kline, P. J., and Smith, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 4, 1995.