Filed 10/22/20  Jara v. Palma CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MIGUEL JARA,<br><br>      Plaintiff, Cross-Defendant and Appellant,<br><br>v.<br><br>MARIA ELENA PALMA et al.,<br><br>      Defendants, Cross-Complainants and Respondents. | A155393<br><br>(San Francisco County Super. Ct. No. CGC-13-530601) |

In 2013, appellant Miguel Jara (Jara) filed a complaint against his siblings to quiet title to property that had been held in the name of his deceased mother.  The siblings filed a cross-complaint seeking among other things partition of the property.  In 2014, summary judgment was granted against Jara on his complaint, following which trial began on the cross-complaint, at which Jara attempted to amend his answer to allege a new affirmative defense, which was denied.  Trial proceeded, at the conclusion of which the court entered an interlocutory judgment granting partition.

Jara appealed the summary judgment and denial of the amendment. He did not appeal the interlocutory judgment.  And in March 2017, we filed our opinion affirming the rulings adverse to Jara.  Following remand, the

1

siblings moved for appointment of a referee, which Jara opposed on the basis the parties had agreed to allow "the court to partition." Despite all that, Jara later moved to vacate the interlocutory judgment on the ground it was in excess of the court's jurisdiction. The motion was denied. Jara appeals. We affirm.

## BACKGROUND

### The General Setting

Herminio Jara and Clodoalda Jara had nine children, one of whom was Jara. In 1972, Herminio and Clodoalda purchased a property on Mission Street in San Francisco (the property), taking title as joint tenants. Herminio died in 1990, at which point title vested on Clodoalda as surviving joint tenant. Clodoalda died intestate in 2000.

In the early 1970's, probably 1973, Jara began operating a taqueria at the property. And in 2013, 13 years after his mother's death, he filed a lawsuit seeking title to the property.

### The Litigation and the First Appeal

In April 2013, represented by attorney Jason Estavillo, Jara filed a verified complaint seeking to quiet title, adverse possession, and declaratory relief, naming as defendants his eight siblings (the siblings or respondents). The essence of Jara's claim was that in 1972 he wanted to buy the property for $39,000 but could not qualify for a loan; his parents agreed to buy the property as joint tenants; that an individual made a personal loan of $10,500 and a savings and loan lent $27,300; Jara repaid both loans and the property taxes; and his parents meant to convey the property to him, but never did. So, Jara contended, he was entitled to the property by adverse possession "since his parents . . . failed to convey title [to the property] before their deaths." The prayer of the complaint asked that the court quiet "title in

2

[Jara's] favor as owner in fee simple of the property . . . and that [the siblings] . . . have no right, title, estate, lien, or interest in the property adverse to [Jara.]"

On June 27, six of the siblings—Berta Gonzalez, Mario Jara, Sandra Jara, Rosalinda Rojas, and Diana Ramirez—filed an answer. They also filed a cross-complaint that sought to quiet title to the property, damages for breach of fiduciary duty, and partition.[1]

On July 22, Jara filed his answer to the cross-complaint, including six affirmative defenses.

In July 2014, the siblings moved for summary judgment of the complaint, set for hearing on October 16 in the law and motion department. Jara did not file opposition. Rather, late in the afternoon of October 15—and after the trial court had issued a tentative ruling granting the motion—Jara filed a request for dismissal. By order of November 10, the Honorable Ronald Quidachay granted summary judgment.

Trial on the cross-complaint was set on the master calendar for November 17, and in fact proceeded before the Honorable James McBride—a trial to which Jara did not object on any jurisdictional basis.[2] On the first day of trial, Jara filed a motion in limine seeking to add a new affirmative defense, a resulting trust. Judge McBride adjourned the trial to allow for written briefing, and then denied Jara's motion. The trial then proceeded with Jara, represented by counsel, fully participating.

On December 19, Judge McBride issued his statement of decision, that he would enter judgment quieting title to the property in nine equal shares,

---

[1] Two of the siblings chose not to resist Jara and in fact would later quitclaim their interest to him.

[2] Jara did try to continue the trial, but was unsuccessful.

3

with Jara to be awarded three shares, his share as well as those of his two siblings who had quitclaimed their interest to him during trial. Judge McBride further ruled that he would grant partition by sale.

Four days later, on December 23, Judge McBride filed an interlocutory judgment in which he combined ownership of an undivided one-ninth interest in the property in each of the six siblings and three-ninths in Jara. And he ordered partition by sale. Jara did not file any objection to the interlocutory judgment.

On March 11, 2015, before a referee could be appointed to sell the property, Jara filed an appeal, appealing the summary judgment and the denial of his motion to amend. He did not appeal the interlocutory judgment, and his appellate brief at no point asserted that the trial leading to the interlocutory judgment was improper.

On March 20, 2017, we filed our opinion rejecting Jara's arguments (*Jara v. Gonzalez* (Mar. 20, 2017, A144573) [nonpub. opn.]), and on May 24 issued our remittitur.

**Proceedings Following Remand**

On September 5, 2017, Jara filed a substitution of attorneys, substituting the firm of Quadra & Coll, LLP as his attorneys, which firm represented him from then on and continues to represent him on appeal.

On October 4, the siblings moved for appointment of a referee to take possession and sell the property. On October 25, Jara opposed the motion on the basis it was unnecessary to appoint a referee (or a real estate broker) because the parties had agreed postjudgment to allow the court to partition by appraisal, and thus appointment of a referee will "result in unnecessary expense that is detrimental to all parties." Indeed, Jara's October 25 memorandum said the court "can and should partition the property by

4

appraisal," going on to say this: "Partition by appraisal is expressly allowed '[w]hen the interests of all parties . . . have been adjudicated,' as here, if the parties agree. [Citation.] The parties agreed that Mr. Jara could purchase the property based on an appraisal, which is a procedure that should be pursued further to avoid unnecessary expenses. . . . Thus, now that the appeal has been decided, the parties should be bound to the procedure they agreed to relating to the Interlocutory Judgment."

On November 17, Judge Quidachay granted the siblings' motion and appointed a referee. Jara lodged no objection that the appointment of a referee was beyond the court's jurisdiction, and in fact on March 16, 2018, Jara stipulated to an order granting the referee authority to retain an appraiser to determine the value of the property and a real estate broker to market it.

Two months later, it was a different story indeed.

On May 23—some three and one-half years after Judge McBride had entered the interlocutory judgment—Jara filed a "motion to vacate the interlocutory judgment" or stay it. The motion was based on Code of Civil Procedure section 473, subdivision (d), on the ground "that the interlocutory judgment is void because [Clodoalda's] estate is not a party to the action, which is required for the court to have in rem jurisdiction to distribute the property at issue." The motion was set for hearing on June 26 in Department 501, the law and motion department.

As Jara's own brief here describes the motion to vacate, it argued that "the estate has never been probated, which is necessary in order to lawfully distribute any property in the estate to Cloldoalda's heirs. Mr. Jara contends that the real property at issue is not part of the estate as Clodoalda was not the lawful owner at the time of her death, which is an issue that can be

5

resolved only in a probate in which the estate is a party. The interlocutory judgment erroneously assumed that the real property was part of the estate and should be vacated for lack of jurisdiction over the estate. [¶] While [the siblings] argued in their summary judgment motion that Mr. Jara could not obtain the property by adverse possession as to them, the trial court never addressed the issue whether Mr. Jara acquired the property by adverse possession as to Clodoalda during her lifetime, so the property was never a part of the estate's *res*, or considered other arguments relating to Mr. Jara's being the beneficial owner of the property. Probate of the estate was the only lawful means to determine if the property was part of the estate that could be distributed to Clodoalda's heirs, after the notice required under Probate Code section 8124."

The siblings filed opposition to the motion to vacate, arguing among other things that the trial court had "concurrent jurisdiction" with the probate court "[i]n actions to quiet title of property alleged to belong to the estate," that the quiet title action was allowed under the Probate Code and case law. The siblings also asserted that Jara waived the right to challenge jurisdiction by failing to raise lack of jurisdiction as an affirmative defense, "Jara should be deemed to lack standing to bring the present motion or at the least be estopped by his earlier litigation choices," and the interlocutory judgment was protected by the doctrines of res judicata and collateral estoppel.

In reply, Jara argued that the siblings did not address the "fundamental" issue that the estate was not a party to this action, so the trial court had no in rem jurisdiction to distribute the property as part of the estate.

The motion to vacate came on as scheduled before the Honorable Garrett Wong who had issued a tentative ruling denying the motion. Jara opposed it, and at the end of a lengthy hearing Judge Wong indicated he would affirm the tentative ruling. And on July 19, Judge Wong entered a formal order denying the motion to vacate, a comprehensive five pages that included findings of fact ending with these six items:

"9. On March 4, 2000 title to 2889 Mission Street passed by intestate succession to Clodoalda's nine children. [Citation.]

"10. The record does not reflect, nor has [Jara] alleged, that [Jara] raised the issues of jurisdiction or probate now raised for the first time in this motion after five years of litigation including an appeal.

"11. If the trial court had lacked jurisdiction the matter should not have been raised on appeal and even if it had not, the Court of Appeal would likely have noticed it and raised it sua sponte.

"12. Even after the appeal and after [Jara] had obtained new counsel, the matter of jurisdiction or probate were not raised in [Jara's] opposition to [the siblings'] application for appointment of a Receiver.

"13. After appointment of the Receiver, [Jara] stipulated that the Receiver engage a broker and retain an attorney and costs, fees and expenses have since been accrued thereby.

"14. At the time of trial concurrent jurisdiction was held by the probate court and San Francisco County Superior Court to determine the relative interests of the parties in 2889 Mission Street. Accordingly, the interlocutory judgment was not entered in the absence of jurisdiction, is not void and should not be vacated or stayed."

And these were Judge Wong's "conclusions of law":

7

"1.  At the time of Herminio C. Jara's intestate death in 1990, title to 2889 Mission Street vested in Clodoalda Jara, his wife and joint tenant.

"2.  On March 4, 2000 the time of Clodoalda Jara's intestate death, title to 2889 Mission Street passed by intestate succession to her nine children, the parties to this lawsuit.

"3.  In November of 2014 concurrent jurisdiction to determine the relative interests of the parties in 2889 Mission Street was held by the probate court and by San Francisco County Superior Court.

"4.  This Court had jurisdiction over the parties and 2889 Mission Street at the time of the December 23, 2014 interlocutory judgment.  The judgment is not void, should not be vacated and should not be stayed."

On August 3, 2018, Jara filed his notice of appeal of the order denying his motion to vacate or stay the interlocutory judgment.  While this appeal was pending, the parties stipulated to the sale of the property by the receiver, and Judge Wong ordered the proceeds to be held in trust pending resolution of this appeal.

## DISCUSSION

### Introduction

Jara has filed a 64-page opening brief.  Following a brief statement of facts, and a 13-page recitation of the "Procedural History," the brief has one substantive argument, which we quote from the table of contents:

"B.  The trial court had no in rem jurisdiction to distribute the property to Clodoalda's intestate heirs because the estate is not a party and notice was not given as required by the Probate Code.

"1.  The trial court erred by purportedly distributing the property by intestate succession to Clodoalda's children in a quiet title action and not in probate.

8

"2.  The trial court lacked fundamental jurisdiction to distribute the res of the estate.

"a)  The trial court has no in rem jurisdiction over the estate that has not been probated.

"b)  The trial court has no jurisdiction because notice was not published as required under the Probate Code.

"3.  The trial court has no 'concurrent jurisdiction' to distribute the estate without probate.

"4.  [The siblings'] other jurisdictional arguments have no merit.

"C.  The doctrines of waiver, res judicata and collateral estoppel do not apply to the void interlocutory judgment."

Jara's brief cites 54 cases (including one from 1898) and 50 statutes. What Jara does not cite, or even mention, are cases that are on point and dispositive of his arguments—including a leading case from this very court. Such advocacy is not to be condoned.  (Rules Prof. Conduct, rule 3.3(a)(2) [a lawyer shall not "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel, or knowingly misquote to a tribunal the language of a book, statute, decision or other authority"].)

**The Court Had Jurisdiction to Enter the Interlocutory Judgment**

*Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333 (*Harnedy*) involved an appeal from a judgment following a court trial that rescinded and cancelled a quitclaim deed and declared the property owned by a trust.  Among other things appellant claimed that the Alameda County Superior Court lacked subject matter jurisdiction which was "only in the Probate Department."

9

(*Id*. at p. 1342.) We rejected the argument in an exhaustive discussion addressing the very points Jara raises here. This is what we said:

"[A]ppellant contends the trial court lacked subject matter jurisdiction and that such jurisdiction reposed only in the Probate Department of the Alameda County Superior Court. Again, this argument is presented here for the first time, as the issue of the trial court's jurisdiction was never raised below.

"Appellant misunderstands the concept of subject matter jurisdiction, a concept this court has rather clearly defined in two recent cases, *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1021–1022 (*Bell*), and *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087–1088 (*O'Connor*).

"In *Bell*, we affirmed a decision of the San Francisco Superior Court sustaining a demurrer to an attorney's declaratory relief action in that court for fees he had allegedly incurred in prosecuting a minor's personal injury action in the Nevada County Superior Court. In the course of our decision, we had occasion to consider whether the latter court had exceeded its jurisdiction in ruling as it did on a dispute between two sets of attorneys regarding attorney fees and liens for the validity of purported liens for the same. Holding that it did, we noted that the type of jurisdictional defect inherent in the Nevada County court's action was not subject matter jurisdiction because the county's court was 'clearly competent to rule on an attorney fee dispute of the sort involved here.' (*Bell, supra*, 36 Cal.App.4th at pp. 1021–1022.) We went on to hold that all that was involved was an act by that court 'in excess of jurisdiction,' which could be obviated if the party claiming a lack of jurisdiction was estopped to assert that defense (which we held he was there). (*Id*. at p. 1022.)

10

"In support of the distinction between lack of subject matter jurisdiction and actions in excess of jurisdiction, we cited the leading Supreme Court case on the subject, A*belleira v. District Court of Appeal* (1941) 17 Cal.2d 280 (*Abelleira*).  There, in an opinion authored by Chief Justice Gibson, our Supreme Court defined subject matter jurisdiction thusly: 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.  [Citation.]  [¶] . . . [¶]

"The year after *Bell* was published, we decided *O'Connor*, which also dealt with the definition of subject matter jurisdiction.  There, we were called upon to decide whether the San Francisco Superior Court was correct in exonerating a surety of liability for damage caused to a conservatorship estate when that order was based in part on the ground that certain probate court orders were void for lack of jurisdiction.  On appeal before us, the respondent bonding company urged us to affirm, contending that an order of the probate court was outside of its subject matter jurisdiction.  (*O'Connor*, *supra*, 48 Cal.App.4th at p. 1087.)  We disagreed, stating:  'Both the trial court and Old Republic mischaracterize the jurisdictional problem at issue in this case; both fail to distinguish between conduct by a court that has no jurisdiction over the subject matter on the one hand and action which is in excess of the court's jurisdiction on the other hand . . . .  [¶]  The principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it.  (See *Abelleira*[, *supra*,] 17 Cal.2d 280, 288.)  'In contrast, a court acts in excess of its jurisdiction " 'where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act

11

without the occurrence of certain procedural prerequisites.' " [Citations.]'
(*O'Connor*, *supra*, 48 Cal.App.4th at pp. 1087–1088.)

"Clearly, the Alameda County Superior Court department that heard this case did not lack jurisdiction in any fundamental sense; it was clearly 'competent' and had 'inherent authority' to hear the case, and there were no territorial or other bars to its jurisdiction. Appellant's contention to the contrary rests almost entirely on several passages in *Saks* [*v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419 (*Saks*)] in which that court used 'subject matter jurisdiction' to describe what it said the Probate Department of the San Francisco Superior Court had and other departments of that court lacked regarding the dispute in that case.

"With all due respect to the *Saks* court, such a characterization is simply incorrect. In the first place, and as the *Saks* court noted in footnote 7 of its opinion, there are many counties in this state, indeed probably the majority, that lack a formal probate department. If a superior court department in Del Norte County enters an order in a probate proceeding, it clearly has 'subject matter jurisdiction' to do so. That and that alone should suffice to make it clear that we are not talking about any sort of 'fundamental' jurisdiction as defined in the passage quoted above from *Abelleira.*

"But, even before *Abelleira*, our Supreme Court made clear that, even in a county having a formal probate department, a nonprobate department *does not* lack fundamental jurisdiction over a probate matter. Instead, and as that court held in *Dowdall v. Superior Court* (1920) 183 Cal. 348, 353 (*Dowdall*), the probate department has 'primary' jurisdiction and a nonprobate department 'secondary' jurisdiction of probate-related proceedings. (See also, to the same general effect: *County of San Diego v.*

12

*State of California* (1997) 15 Cal.4th 68, 87–88; *Estate of Knox* (1942)
52 Cal.App.2d 338, 344–346; *Estate of McLennan* (1938) 29 Cal.App.2d 666,
668; *McCaughna v. Bilhorn* (1935) 10 Cal.App.2d 674, 682–684; *Schuster v.
Superior Court* (1929) 98 Cal.App. 619, 624.)

"Probate Code sections 17000 and 17001 did not change this state of
affairs. Those statutes were enacted (in original form in 1986) to make clear
that the probate departments of the California superior courts could exercise
the full and complete jurisdiction of a regular superior court when hearing
and deciding a probate matter. (See, generally, 11 Witkin, Summary of Cal.
Law (9th ed. 1990) Trusts, §§ 229–230, pp. 1074–1077.) It is true that
Probate Code section 17000, subdivision (a), gives the probate department of
the relevant superior court 'exclusive jurisdiction of proceedings concerning
the internal affairs of trusts.' (Prob. Code, § 17000, subd. (a).) But, for two
separate and distinct reasons that provision does not support appellant's
subject matter jurisdiction argument.

"First of all, and for the reasons made clear in *Abelleira*, the sort of
jurisdiction provided by this section is not the sort of fundamental
jurisdiction, i.e., implicating the competency or inherent authority of the
court, the lack of which would render a judgment void. As a consequence, by
not raising any issue relating to the trial court's jurisdiction below and by,
instead, participating fully in the pretrial and trial of this case, appellant is
barred by principles of waiver (see, e.g., *Brown v. Boren* [(1999)]
74 Cal.App.4th [1303,] 1316–1317) and estoppel (see *Bell*, *supra*,
36 Cal.App.4th at pp. 1022–1025 and *O'Connor*, *supra*, 48 Cal.App.4th at
pp. 1092–1096) from raising any such issue here." (*Harnedy*, *supra*,
110 Cal.App.4th at pp. 1342–1345.)

13

*In re Michael R.* (2006) 137 Cal.App.4th 126, which cited *Harnedy*, is similar. The issue there involved a claim the family court lacked jurisdiction to alter a probate court order involving custody established with a temporary guardianship over Michael. Rejecting the claim, the Court of Appeal held as follows: "Sheryl is correct that probate courts have exclusive jurisdiction over guardianships (Prob. Code, § 17000), but the family court had jurisdiction to act here for two reasons. First, the court had subject matter jurisdiction because 'a nonprobate department *does not* lack fundamental jurisdiction over a probate matter.' (*Harnedy*[, *supra*,] 110 Cal.App.4th [at p.] 1344.) As *Harnedy* explains, 'the sort of jurisdiction provided by this section [Prob. Code, § 17000] is not the sort of fundamental jurisdiction, i.e., implicating the competency or inherent authority of the court, the lack of which would render a judgment void.' (*Id.* at p. 1345.) A family court issuing orders affecting matters within the probate court's exclusive jurisdiction acts only ' "in excess of jurisdiction," ' but does so having subject matter jurisdiction. (*Id.* at p. 1343.) '[A]n act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel or the passage of time.' (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 584.) Consequently, a party failing to raise the issue below 'is barred by principles of waiver [citation] and estoppel . . . .' (*Harnedy* at p. 1345.)" (*In re Michael R.*, *supra*, 137 Cal.App.4th at p. 146.)

In sum, as distilled in *Estate of Bowles* (2008) 169 Cal.App.4th 684, 695, "The superior court is divided into departments, including the probate department, as a matter of convenience; but the subject matter jurisdiction of the superior court is vested as a whole."

As quoted, Jara's argument includes that the court had "no fundamental jurisdiction," there was no "concurrent jurisdiction," the

"interlocutory judgment is void," and, finally, "waiver does not apply." Jara is very wrong, as the above cases make clear. So, too, the leading treatise on California probate law: Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2019). The treatise has a lengthy discussion—25 sections to be precise—on jurisdiction. (*Id*, ¶¶ 3:34-3:58.) That discussion includes "exclusive jurisdiction" and "concurrent jurisdiction" and gives numerous examples of what can and should be adjudicated in which. And after all that, the authors conclude with this statement of the law:

"**[3:59.1] Not a question of 'fundamental' (subject matter) jurisdiction:** Use of the term 'exclusive jurisdiction' in this context is somewhat misleading. It does not refer to jurisdiction in the 'fundamental' sense—i.e., the basic competency or power of a court to hear a case and render a valid judgment (subject matter jurisdiction). A nonprobate department entertaining a matter within 'exclusive' probate court jurisdiction acts *in excess* of its jurisdiction, but it does *not* lack 'fundamental jurisdiction' over the matter. [Citations, including *Harnedy*.]

"As a result, by failing to object when a nonprobate department exercises 'probate jurisdiction,' instead fully participating in those proceedings, a party is barred by principles of waiver and estoppel from raising the issue on appeal. [Citations, including *In re Michael R*.]" (Ross & Cohen, Cal. Practice Guide: Probate, *supra*, ¶ 3:59.1.)

In short, Judge McBride had jurisdiction to enter the interlocutory judgment he did. Not only that, any claim Jara had to the contrary was waived by his years of participation without objection in the various proceedings below. And were all that not enough, in his October 25, 2017 opposition to the siblings' motion for appointment of a referee, Jara expressly said the court "can and should partition the property by appraisal," going on

15

that "[t]he parties agreed that Mr. Jara could purchase the property based on an appraisal, which is a procedure that should be pursued further to avoid unnecessary expenses. . . . Thus, now that the appeal has been decided, the parties should be bound to the procedure they agreed to relating to the Interlocutory Judgment."

*Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662 (*Davis*) involved appellate counsel who failed to cite applicable authority. Addressing the effect of that failure, we noted that "[i]n 2018, our Supreme Court approved a comprehensive revision of the California Rules of Professional Conduct, effective November 1, 2018. The new rules replace the former rules, and implement a decimal numbering and organizational system based on the American Bar Association Model Rules of Professional Conduct. As pertinent here, this revision includes new rule 3.3, 'Candor Toward the Tribunal,' which provides in pertinent part as follows: 'A lawyer shall not [¶] . . . [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel or knowingly misquote to a tribunal the language of a book, statute, decision or authority. . . .' " (*Davis*, *supra*, 41 Cal.App.5th at pp. 677–678; see generally *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, fn. 9.)

We said in *Davis* that "It is hard to imagine legal authority more directly adverse" to appellant, hard to imagine a more obvious violation of Rule 3.3. (*Davis*, *supra*, 41 Cal.App.5th at p. 678.) The same can be said about Jara's brief here.

The last section of respondents' brief, section D, contends that "attorney fees are warranted" because Jara's appeal is frivolous or taken solely for purposes of delay. There follows three short paragraphs elaborating on the

16

statement, and the conclusion of the brief urges us to affirm the trial court and "find" that the appeal "is frivolous" and award attorney fees to respondents.  However, respondents make no actual motion for sanctions and, moreover, have not filed a declaration required by California Rules of Court, rule 8.276(b)(1).  The request for sanctions is denied.

## DISPOSITION

The order denying the motion to vacate is affirmed.  Respondents, the siblings, shall recover their costs on appeal.

_____

Richman, Acting P.J.

We concur:


_____

Stewart, J.


_____

Miller, J.


*Jara v. Palma* (A155393)