[Nos. B191484, B191488, B191491, B192908. Second Dist., Div. Three. June 26, 2008.]

LAWRENCE I. SCHWARTZ, Plaintiff and Appellant, v.
FRUMEH LABOW, as Trustee, etc., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 3. of the Discussion.

**COUNSEL**

Irell & Manella, Gregory R. Smith, Alana Hoffman, Paul N. Frimmer, Joseph M. Lilpner, Michael F. Bacchus and Michael H. Strub, Jr., for Plaintiff and Appellant.

Law Offices of Paul F. Cohen, Paul F. Cohen and Liza Amtmanis for Defendant and Respondent Frumeh Labow.

No appearance for Defendants and Respondents Cheryl Lawson, Craig Lawson, Michelle Lawson and Lionel Sanders.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

Lawrence I. Schwartz, as trustee of the Lawson Revocable Trust (the Trust), appeals from various orders of the probate court suspending most of his powers and appointing Frumeh Labow as "interim trustee," and ordering him to turn over all Trust documents and books to Labow. He contends that, in the absence of a proper petition before it, the court had no jurisdiction to

issue these orders. In the published portion of this opinion, we hold that appellant's petition for approval of his account under Probate Code section 17200, subdivision (b)(5)[1] invoked the court's inherent equity power to suspend certain of appellant's powers as trustee for perceived breaches of trust pending a full hearing. Accordingly, we affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Trust*

Louis W. and Sylvia Lawson, now deceased, established the Trust in November 1995. The beneficiaries are the three adult children of the now deceased trustors. Cheryl Lawson (Cheryl) is one of the beneficiaries.[2] The total value of the Trust's assets on hand as of May 24, 2003, was $2,104,780.63. Of that, $74,780.63 was cash held by the trustee. The Trust's largest asset was the family residence.

The settlors served as trustees until they became conservatees in May 2003. Appellant succeeded the trustors as the sole trustee. In January 2003, appellant drafted the Trust's sole amendment and restatement. In August 2003, the probate court appointed Lionel B. Sanders, certified public accountant, conservator of Sylvia's and Louis's estates in the related conservatorships.

### 2. *The civil action*

One of the Trust's assets was title to an undivided one-half interest in real property in Santa Barbara, California. Beneficiary Cheryl held the other one-half interest. In May 2003, Louis and Sylvia executed a quitclaim deed conveying the Trust's interest in that property to Cheryl. Cheryl then filed a complaint against the Trust to quiet title in Santa Barbara Superior Court. According to appellant in his later filed account, Cheryl's litigation style drove up the cost to the Trust of the lawsuit.

As a solution to the cost problem, appellant proposed filing an elder abuse action (Welf. & Inst. Code, § 15600 et seq.) against Cheryl to "permit the recovery of attorneys' fees" from her. Although conservator Sanders opposed filing such a lawsuit for more than six months because of the health of the senior Lawsons, he eventually acquiesced.

---

[1] All further statutory references are to the Probate Code.

[2] We refer to various Lawsons by their first names for clarity and intend no disrespect thereby. (See *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 459 [69 Cal.Rptr.3d 789].)

Accordingly, for the express purpose of obtaining a recovery of attorney fees, appellant and conservator Sanders sued Cheryl alleging elder abuse (the civil action).[3] In July 2005, after the case was removed to Los Angeles County, the trial court in the civil action entered judgment in favor of appellant and conservator Sanders and against Cheryl in the amount of $683,769.83, plus yet-to-be-fixed costs and fees. Cheryl appealed from the judgment and so it is not final. Cheryl also filed for bankruptcy court protection under chapter 11.

### 3. *The trustee's account*

On August 25, 2005, appellant filed his first account, seeking approval of his actions and requesting trustee's fees pursuant to section 17200, subdivision (b)(5) and (9). Appellant's supplement to the account, dated September 16, 2005, focused on the litigation against Cheryl. Appellant's account showed that the value of the Trust assets at the end of the accounting period was $1,376,587.78, of which $731,847.83 was the as-of-yet-uncollected judgment against Cheryl, and $5,222.10 was cash. The trustee had encumbered and then sold the senior Lawsons' residence to pay the "expense of the litigation . . . ."

### 4. *The suspension of the trustee's powers*

Verified objections to appellant's account were filed by Labow as conservator of the persons of Louis and Sylvia Lawson, conservator Sanders, and the probate volunteer panel attorney for the senior Lawsons. Each objector requested that appellant be immediately suspended and surcharged, and Labow requested that she be appointed interim trustee until the court ruled on appellant's account. Among the bases for the objections was that appellant had spent the trust's assets on trustee's and attorney fees leaving insufficient money for the level of care the senior Lawsons deserved. Conservator Sanders explained how, according to the account, appellant spent $1,271,593.40 on attorney and trustee's fees and requested appellant be required to justify spending that sum to pursue a judgment of $683,769.83 where the likelihood of recovering those fees in addition to the judgment was "extremely low."

---

[3] The action was entitled *Sanders v. Lawson* (Super. Ct. L.A. County, 2005, No. 081896) and is the subject of a companion appeal in this court (*Sanders v. Lawson* (2008) 164 Cal.App.4th 434 [78 Cal.Rptr.3d 851]).

The probate court's notes indicated its concerns about appellant's account. The notes questioned the authority for appellant to borrow money to finance the lawsuit. They also asked what the legal services were to justify the fees paid, and whether those services benefitted the estate. The notes stated, "Notwithstanding terms of tr[ust] re h[ou]rly rate of t[rust]ee, who is an att[orne]y, *fees appear outrageous considering size of tr[ust] estate* . . . ." (Italics added.)

### a. *The order of October 17, 2005*

At the hearing on the petition to settle the account held on October 17, 2005, the objectors pressed their arguments. Appellant countered, among other things, that a motion for fees against Cheryl in the civil action was pending and only he and his attorney had the information and ability to pursue that motion. After hearing these arguments, the court suspended appellant as trustee.

Appellant's attorney then responded by broaching a proposal discussed by the parties under which the court would carve out of any suspension order the power to pursue the fee motion in the civil action on behalf of the trust. Appellant's counsel found the "carve out" to be "intrigu[ing]." The court asked the parties whether they would like to discuss a "carve out" outside the courtroom. Although the conservator was doubtful, appellant's counsel agreed. The court ordered the parties to discuss a "carve out."

### b. *The order of November 17, 2005*

By the November 17, 2005 hearing, the parties had reached an agreement about the "carve out" raised in court by appellant's attorney. Appellant stipulated, among other things, that Labow would be appointed successor trustee under *Moeller v. Superior Court* (1997) 16 Cal.4th 1124 [69 Cal.Rptr.2d 317, 947 P.2d 279] (*Moeller*) and *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201 [91 Cal.Rptr.2d 716, 990 P.2d 591] (*Boltwood*). The probate court vacated its previous orders suspending appellant, nunc pro tunc, to October 17, 2005, and reinstated appellant *but limited his powers to seeking the attorney and trustee's fees in the civil action, at no cost to the Trust.*

The court issued its order on March 30, 2006, reflecting its ruling, inter alia, that appellant would remain trustee with powers limited *solely* to the completion, at his own cost, of the pending fee matter in the civil action. The

court specified that appellant would have no power to file any motions or engage in any other activity in the bankruptcy court with regard to Cheryl's bankruptcy, and would have no power to seek enforcement of the judgment in the civil action. The court ordered appellant to serve on Labow all documents filed by him or served upon him by Cheryl in the civil action, and ruled that Labow, as temporary trustee, was entitled to obtain copies of all future communications between appellant and his attorney with respect to the civil action only. Appellant appealed from that order.

### c. *The orders of January 19, 2006, and May 22, 2006*

The court ordered appellant on January 19, 2006, to turn over all personal property of the senior Lawsons to the successor trustee and to clear the probate court's notes by the next hearing.

On May 22, 2006, Labow, as successor trustee, argued that appellant was refusing to turn documents over to her on the ground she was only an interim trustee. The court ordered that Labow be successor trustee "forthwith." The court ordered appellant to hand over all books and records of the Trust to Labow's attorney and to transfer all privilege issues to Labow. Appellant appealed from that order.

### d. *The order of July 24, 2006*

On July 17, 2006, Labow, as interim trustee, petitioned the probate court under section 17200, subdivision (b)(10) to remove appellant as trustee for all purposes for appellant's refusal to comply with previous court orders to turn the Trust documents over to her. As appellant had been insisting that he was not suspended and that Labow was not an interim trustee, on July 19, 2006, Labow applied ex parte for an order under section 15642, subdivision (e) to *suspend* appellant's remaining powers and compel him to surrender all Trust property, including documents subject to the attorney-client and work-product privileges, pending the court's order on the removal petition.

On July 24, 2006, the probate court issued an order finding that the suspension of appellant had been warranted. The court stated that it had suspended appellant's powers on October 17, 2005, for asserted breaches of duty, including paying himself and his attorneys approximately $1.3 million of Trust funds to obtain a judgment of around $700,000 in the civil action without probate court order and without filing a fee petition. It was likely that the judgment against Cheryl would be only partially collectible, the court

found. After appellant was suspended, the court found, Labow stipulated to an order at appellant's attorney's urging, appointing appellant as trustee with limited powers to pursue the fee motion in the civil action. This order was based on the express condition that Labow would hold the attorney-client privilege for appellant's acts concerning those fees and the privilege for all actions taken before his suspension. However, appellant refused to turn over the Trust property and records, claiming privilege and asserting that Labow was only an interim trustee.

Based on these facts, the probate court suspended appellant, effective "forthwith"; ordered Labow to succeed immediately to appellant's position in the civil action; and granted Labow authority to do all that was necessary to protect the Trust. The court directed appellant to turn over to Labow all Trust files, records, and books, irrespective of attorney-client privilege. The court scheduled a hearing on the removal petition for September 11, 2006. Appellant appealed from that order and we consolidated the three appeals.

## DISCUSSION

1.  *The probate court had jurisdiction in November 2005 to suspend appellant's trustee's powers.*[4]

Appellant contends, in the absence of the procedural prerequisite of a petition for removal, that the probate court had no jurisdiction to suspend or limit his powers, appoint Labow as interim[5] or successor trustee, or to order him to turn Trust documents over to Labow before July 2006, when it received the first petition for removal under section 15642, subdivision (e).[6]

---

[4] Labow observes that appellant never appealed from the October 17, 2005 order suspending him and so we may not address it. Appellant responds that it was not an appealable order under section 1300, subdivision (g) because that subdivision provides for an appeal from orders surcharging, removing, or discharging a fiduciary, but not suspending one. He further asserts that he has challenged three separate and substantively different orders to turn over trust property, "any one of which can be the occasion for examination of the October 17, 2005, suspension." We agree with appellant that the November 17, 2005 order was the first appealable one (§ 1300, subd. (c)) and that his appeals allow us to examine the October 17, 2005 order.

[5] For purposes of this case, we see no distinction between a "successor trustee" and a successor trustee whose appointment was of "interim" power or duration, until a full hearing is held. (See *Estate of Joslyn* (1967) 256 Cal.App.2d 671, 676–677 [64 Cal.Rptr. 386].)

[6] Appellant also observes that the probate court was aware of the petition requirement because the court's notes from October 17, 2005, indicate that a matter to be cleared was the "request for suspension of powers and appointment of receiver to be made in separate pet[itio]n."

He observes that sections 17200[7] (petition for removal of trustee), 17206[8] (petition to take action), and 15642, subdivision (e)[9] (petition for suspension of trustee), all contemplate that a petition for removal be filed before the court can remove, suspend, or appoint a trustee, and no such petition was before the probate court in October or November 2005.

The question of jurisdiction here does not involve the probate court's subject matter jurisdiction. The probate court's general jurisdiction encompasses "the internal affairs of trusts" and "[o]ther actions and proceedings involving *trustees* . . . ." (§ 17000, subds. (a), (b)(3), italics added.) Rather, we are concerned with jurisdiction in the sense of the court's power or authority to act. (See *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087 [56 Cal.Rptr.2d 386], disapproved on another point in *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 280 [109 Cal.Rptr.2d 807, 27 P.3d 702].) "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) "But in its ordinary usage the phrase 'lack of jurisdiction' " is also employed "where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Ibid.*; accord, *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1022 [43 Cal.Rptr.2d 717] (*Bell*).) The question presented here involves the latter form of jurisdiction, i.e., whether the probate court, having fundamental subject matter jurisdiction, acted in excess thereof in ordering appellant's suspension, without the prerequisite of a petition for removal.

---

[7] Section 17200 reads in relevant part, "(a) . . . a trustee or beneficiary of a trust *may petition* the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust. [¶] (b) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes: [¶] . . . [¶] (5) Settling the accounts and passing upon the acts of the trustee . . . . [¶] . . . [¶] (10) Appointing or removing a trustee. [¶] . . . [¶] (12) Compelling redress of a breach of the trust by any available remedy." (Italics added.)

[8] Section 17206 authorizes the probate court "in its discretion [to] make any orders and take any other action necessary or proper to dispose of the matters presented by *the petition*, including appointment of a temporary trustee to administer the trust in whole or in part." (Italics added.)

[9] Section 15642, subdivision (e) provides that "If it appears to the court that trust property or the interests of a beneficiary *may suffer loss* or injury *pending a decision on a petition for removal of a trustee* and any appellate review, *the court may, on its own motion* or on petition of a cotrustee or beneficiary, *compel the trustee whose removal is sought to surrender trust property* to a cotrustee or *to a* receiver or *temporary trustee. The court may also suspend the powers of the trustee to the extent the court deems necessary.*" (Italics added.)

■ The probate court has general power and duty to supervise the administration of trusts. Proceedings in the probate court "concerning the internal affairs of the trust" are commenced with the filing of a petition. (§§ 17201, 17200, subd. (a); Ross, Cal. Practice Guide: Probate (The Rutter Group 2007) ¶ 2:116.20, p. 2-76.13.) Contrary to appellant's contention, such a petition was filed here: *appellant's own* "First Account Current & Report of Trustee, and Petition for: 1. Approval of Acts of Trustee; and 2. Approval of Trustee's Fees" *pursuant to section 17200, subdivision (b)(5)* and (9). Although appellant is correct that the petition was not one for removal (§ 17200, subd. (b)(10)), or suspension pending removal (§ 15642, subd. (e)), the petition was filed under section 17200, subdivision (b)(5) which asked the court not only to approve his account, but also *to pass upon his acts.*

Presented with a section 17200 petition to settle an account, "the probate court has a duty *imposed by law* to inquire into the prudence of the trustee's administration." (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 594 & fn. 10 [226 Cal.Rptr. 855], citing *McLellan v. McLellan* (1941) 17 Cal.2d 552 [110 P.2d 1034] & *Carr v. Bank of America etc. Assn.* (1938) 11 Cal.2d 366 [79 P.2d 1096].) Appellant's petition to settle his account under section 17200 activated the probate court's duty and authority to scrutinize appellant's account.

To preserve the trust and to respond to perceived breaches of trust, the probate court has wide, express powers to "make any orders and take any other action necessary or proper to dispose of the matters presented" by the section 17200 petition. (§ 17206.) Among the remedies in the probate court's arsenal is the express power to remove a trustee on its own motion, *without a petition* (§ 15642, subd. (a); see 3 Gillick et al., Cal. Civil Practice: Probate & Trust Proceedings (1992) Remedies (2005 supp.), §§ 24:96, pp. 24-102 to 24-105 & 24:47, p. 24-60), along with the express authority to suspend a trustee pending a hearing on a petition for the trustee's removal. (§ 15642, subd. (e).)

■ More important, the probate court has the "*inherent power* to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust." (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951 [20 Cal.Rptr.2d 433], italics added.) This inherent equitable power of the probate court has long been recognized to encompass the authority to take remedial action. "Under California trust law, a court can intervene to prevent or rectify abuses of a trustee's powers. [Citations.]" (*Edwards v. Edwards* (1998) 61 Cal.App.4th 599, 604 [71 Cal.Rptr.2d 653].) And, where a probate court has the express authority to remove a trustee sua sponte (§ 15642,

subd. (a)), it necessarily has the inherent equitable power to employ the less extreme remedy of suspending most of the trustee's powers and appointing an interim trustee pending a hearing. (*Getty v. Getty* (1988) 205 Cal.App.3d 134, 142 [252 Cal.Rptr. 342] [where probate court has authority in exercise of its general jurisdiction to *remove* a trustee, it may also, in exercise of inherent equity jurisdiction, take the ancillary step of removing only some of the trustee's powers and appointing a trustee ad litem].)

■ Here, appellant submitted himself to the jurisdiction of the probate court when he filed his *petition under section 17200, subdivision (b)(5)* asking the court to settle his account and pass on his acts. His petition triggered the probate court's duty to scrutinize the prudence of his adminis-tration of the Trust. (*Lazzarone v. Bank of America, supra*, 181 Cal.App.3d at p. 594 & fn. 10.) Appellant's account and supplement, together with the verified objections and supplemental objections from at least three parties requesting that appellant's powers be suspended and that he be surcharged, raised red flags about appellant's actions as reflected in appellant's petition. Equipped with broad, express and inherent powers to take any action necessary to dispose of matters presented by the petition (§ 17206), mani-festly the probate court had the jurisdiction (i.e., power) to take the steps it did in October and November 2005 to protect the trust from perceived and threatened abuse by suspending most of appellant's powers and appointing a successor trustee in accordance with the carve-out stipulation, pending a hearing.[10]

Our conclusion "makes sense as a matter of judicial economy." (*Estate of Heggstad, supra*, 16 Cal.App.4th at p. 951.) We reject appellant's implication that a trustee may be removed or suspended only in response to petitions under section 17200, subdivision (b)(10) or section 15642, subdivision (e). (Cf. *Estate of Heggstad, supra*, at p. 952 [no legal significance that trustee sought relief through petition for instruction under section 17200 rather than for conveyance under section 9860].) "Even if the petition did not fall within the literal provisions of section 17200, subdivision (b), it nevertheless would fall within the general jurisdiction of probate courts under sections 17000 and 17200 for proceedings concerning the internal affairs of a trust" (*Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1342–1343 [47 Cal.Rptr.2d 587]; cf. *Stewart v. Towse* (1988) 203 Cal.App.3d 425, 428–429 [249 Cal.Rptr. 622]), or "involving trustees" (§ 17000). It would be illogical, in light of the probate court's authority to remove a trustee sua sponte (§ 15642, subd. (a)), its general jurisdiction, and its inherent equitable powers— where there is already a section 17200 petition pending—to require the court

---

[10] Accordingly, because the probate court here had a petition before it and appellant had notice of the requests to suspend him, *Estate of Joslyn, supra*, 256 Cal.App.2d 676 is distinguished. (See *Conservatorship of O'Connor, supra*, 48 Cal.App.4th at p. 1091.)

to wait for a beneficiary's petition for removal or suspension pending removal (§§ 17200, subd. (b)(10), 15642, subd. (e)) before the court could take action to protect the trust from possible injury or loss shown by a trustee's petition to settle an account. (Cf. *Estate of Heggstad, supra,* at p. 951 [trustee's petition for instruction under section 17200, subdivision (b)(1) invokes probate court's "general jurisdiction to decide the merits of a third party challenge to the inclusion of property in a trust"].) The suggestion that the court may pass on the trustee's acts under section 17200, subdivision (b)(5), and take any action necessary to dispose of the matters presented by the section 17200 petition (§ 17206), but may not suspend that trustee for those same acts, even where it appears that the trust may be injured, simply ignores the probate court's extensive, general express, and inherent equity powers.

We are mindful of appellant's due process rights. Appellant had the requisite notice of the effort to suspend his powers. Even if the objections were untimely in October 2005 because filed within 30 days of that hearing (§ 17203, subd. (a)), they *were not untimely* with respect to the November 2005 hearing appealed from. Long before that hearing, appellant had his account and supplement, along with the verified objections and supplemental objections from three parties containing requests to suspend appellant's powers and surcharge him for enumerated breaches of duty. These various documents all provided appellant with the requisite notice in advance of the November 17, 2005 hearing that the precise issue before the court was his suspension and surcharge. Finally, as the probate court was aware, appellant was entitled to a hearing on his petition for approval of his acts, which hearing was scheduled but postponed because of appellant's appeals.

██  Appellant next argues that the probate court did not receive any evidence or make findings to justify the suspension order. The probate court made findings in July 2006 that reflect its earlier suspension rulings. Respondent's appendix contains[11] appellant's account and supplement, the verified objections, and the probate court's notes showing the issues the court wanted resolved. These documents provide support for the July 2006 minute order in

---

[11] Appellant filed a judgment roll appeal. His appendix (Cal. Rules of Court, rule 8.124) consists of the probate court's orders, appellant's notices of appeal, Labow's July 2006 ex parte petition to suspend appellant's remaining powers (§ 15642, subd. (e)), a transcript from one hearing, and the docket. *It did not contain appellant's section 17200 petition to settle his account* under subdivision (b)(5). Our powers are limited in the case of a judgment roll appeal. "[U]nless error appears on the face of the record, all intendments will be in support of the judgment. [Citation.]" (*Maywood Mut. Water Co. v. County of Los Angeles* (1970) 12 Cal.App.3d 957, 959–960 [91 Cal.Rptr. 206].) We therefore presume the court made the necessary findings and, for that reason alone, appellant's challenge to the probate court's findings is unavailing. However, Labow filed a 559-page respondent's appendix and a nine-document request for judicial notice because the appellant's appendix contained a paucity of relevant information. We reviewed the evidence contained in the respondent's appendix and conclude it supports the court's findings.

which the court found that it had suspended appellant for spending approximately $1.3 million in Trust funds, without court order, to obtain a judgment in the civil action of just under $700,000, which judgment was likely to be only partly collectible. Where the decision to remove a trustee lies within the probate court's discretion (*Estate of Gilmaker* (1962) 57 Cal.2d 627, 633 [21 Cal.Rptr. 585, 371 P.2d 321]), the decision to suspend most of the trustee's powers likewise falls within the court's discretion. We cannot say based on the documents it had before it that the court abused its discretion in suspending appellant's powers pending a hearing on whether he should be fully removed and surcharged.

■ In any event, appellant is estopped from appealing from the order in November 2005 restricting his powers as trustee to proceed against Cheryl for fees in the civil action and appointing Labow interim trustee because he stipulated to it. His contention on appeal to the contrary notwithstanding, appellant did not object to the order restricting his authority on November 17, 2005.[12] On October 17, 2005, *his attorney raised the subject of a "carve out" to limit his power,* and on November 17, 2005, *he stipulated that his power would be restricted to* pursuing the pending fee motion against Cheryl. "[A] party may, by its conduct, be estopped from contesting an action *in excess of* jurisdiction" (*Bell, supra,* 36 Cal.App.4th at pp. 1022–1023, italics added) because conduct that is in excess of jurisdiction by a court that has subject matter jurisdiction is voidable not void. (*Conservatorship of O'Connor, supra,* 48 Cal.App.4th at p. 1088.) When, as here, " ' "the court has jurisdiction of the subject, a party who seeks or consents to action [that might be] beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.]" ' " (*Id.* at p. 1092; see *Bell, supra,* at pp. 1023–1024.) Having suggested the "carve out" to the probate court and then stipulating to it, appellant is estopped to challenge the ensuing November 2005 suspension order as taken in excess of the court's jurisdiction.

2.  *As the predecessor trustee, appellant had no right after November 17, 2005, to refuse to turn over original documents pertaining to Trust administration to the successor trustee.*

Appellant contends he could not be required to turn over Trust documents to a "stranger" to the Trust, i.e., Labow. As trustee, he had a "duty to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property." (§ 16006.) Appellant argues that, where his efforts

---

[12] A fair review of the transcript from October 17, 2005, shows that appellant objected to the court's suspending him before holding an evidentiary hearing and before he had the opportunity to appear at the hearing on the fee motion in the civil action. Appellant never raised an objection based on jurisdiction.

to protect the Trust documents were consistent with that duty, he could not be ordered to turn over documents that include attorney-client privilege to a stranger. The contention is unavailing.

Again, appellant is estopped to challenge the order. (*Bell, supra,* 36 Cal.App.4th at pp. 1023–1024.) Just as with appellant's stipulation to the limitation of his powers, at the November 17th hearing, he stipulated that "Miss Lebeau [*sic*], as I said, would be successor trustee for *Moeller* and *Boltwood.*" Where appellant stipulated to Labow's appointment as successor trustee with the powers and rights under *Moeller* and *Boltwood,* he is estopped to challenge any perceived error in that order.

■ Nor was the successor trustee a "stranger" to the Trust after November 2005, and certainly after May 2006, when the court declared Labow the successor trustee. When the probate court appoints a successor trustee, that new trustee accedes to the position of the former trustee along with the same powers granted by the trust documents. In *Moeller,* our Supreme Court held that a predecessor trustee may not assert the attorney-client privilege as to documents reflecting confidential communications between the predecessor and an attorney on trust administration matters to the extent the predecessor trustee was acting in the official capacity as trustee. (*Moeller, supra,* 16 Cal.4th at pp. 1127, 1134.) The Supreme Court explained: "The powers of a trustee are not personal to any particular trustee but, rather, are inherent in the office of trustee. It has been the law in California for over a century that a new trustee 'succeed[s]' to *all* the rights, duties, and responsibilities of his predecessors.' [Citations.] . . . 'The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust.' . . . [T]he power to assert the attorney-client privilege follows from the trustee's power to hire an attorney in order to obtain advice regarding administration of the trust and to litigate to protect trust property. The trustee's power to assert that privilege thus is certainly essential to its effective administration of the trust. *Therefore, when a successor trustee takes office it assumes all of the powers of trustee, including the power to assert the privilege with respect to confidential communications between a predecessor trustee and an attorney on matters of trust administration.*" (*Id.* at p. 1131, first italics in original, second italics added; accord, *Boltwood, supra,* 22 Cal.4th at pp. 208–209; see also, 3 Gillick et al., Cal. Civil Practice: Probate & Trust Proceedings, *supra,* § 24:48, pp. 24-61 to 24-63.)[13]

---

[13] Accordingly, appellant must turn over all of the documents pertaining to Trust administration, including all documents in connection with the civil action and motion for attorney's and trustee's fees in that action. "If a predecessor trustee seeks legal advice in its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty, the predecessor may be able to avoid disclosing the advice to a successor trustee by hiring a

When appellant stipulated on November 17, 2005, to treating Labow as successor trustee, Labow assumed all powers of trustee under the Trust, except for the carved-out power to pursue fees against Cheryl in the civil action. Moreover, pursuant to the stipulation, *Moeller*, and *Boltwood*, appellant had no attorney-client privilege with respect to communications about Trust administration, which included the prosecution by the Trust of the civil action against Cheryl. Therefore, the attorney-client privilege was not available to appellant as predecessor trustee to justify his refusal to turn the Trust documents over to Labow as successor trustee.

At oral argument, the parties disputed whether a predecessor trustee had the obligation to surrender *original* Trust documents to a successor trustee. As of the November 2005 and certainly the May 2006 orders that appellant turn over all books and records of the Trust to Labow and transfer all privilege issues to her, appellant, as predecessor trustee, had no justification for retaining *any originals*. He was obligated to "deliver the trust property to the successor trustee." (§ 15644.)[14] Labow had been unequivocally appointed successor trustee assuming most of appellant's powers (see § 16420, subd. (a)(4))[15] and so, under *Moeller*, Labow held the attorney-client privilege as to all documents, books, and things involving Trust administration matters. (*Moeller, supra,* 16 Cal.4th at p. 1127.) As predecessor trustee, appellant had no right to the Trust papers which means no right to keep the originals.

3. *No undertaking was paid and sanctions are not appropriate in this case.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*separate lawyer* and paying for the advice out of *its personal funds*. [Citations.]" (*Moeller, supra,* 16 Cal.4th at p. 1134, italics added, fn. omitted.)

[14] Section 15644 reads: "When a vacancy has occurred in the office of trustee, the former trustee who holds property of the trust shall deliver the trust property to the successor trustee or a person appointed by the court to receive the property and remains responsible for the trust property until it is delivered. A trustee who has resigned or is removed has the powers reasonably necessary under the circumstances to preserve the trust property until it is delivered to the successor trustee and to perform actions necessary to complete the resigning or removed trustee's administration of the trust."

[15] Section 16420 reads in relevant part: "(a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate: [¶] . . . [¶] (4) To appoint a receiver or temporary trustee to take possession of the trust property and administer the trust."

*See footnote, *ante,* page 417.

## DISPOSITION

The orders appealed from are affirmed. Respondent Labow shall recover costs of appeal.

Klein, P. J., and Kitching, J., concurred.

On July 9, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 16, 2008, S166033.