Filed 12/10/24  Fisher v. Vieira CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| HEATHER FISHER, as Trustee, etc., | C098922 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-PR-TR-2012-0000050) |
| v. | |
| HYLDI VIEIRA, | |
| Defendant and Appellant; | |
| MICHAEL VIEIRA et al., | |
| Defendants and Respondents. | |

In this contentious and long-running battle between siblings over the administration of the family trust created by their parents in 1997, we are asked to decide whether the probate court erred in appointing a new temporary successor trustee.  After both parents (the original cotrustees) passed away and the professional fiduciary who had

1

been appointed as the temporary successor trustee decided to retire, the siblings, who are lifetime beneficiaries of the trust, Hyldi Vieira and Robert G. Vieira,[1] disagreed as to whether a new professional fiduciary should be appointed to administer the trust. The terms of the trust provided for the equal division of the trust's assets into two separate sub-trusts (one for each sibling/lifetime beneficiary) upon the death of both parents. In the trial court, Hyldi argued that there should be a separate successor trustee for each of the sub-trusts to, among other things, avoid any potential conflicts of interest, and that she should be appointed as the successor trustee of her sub-trust pursuant to the terms of the trust instrument. Robert G., who had been removed as a successor cotrustee in 2012 after giving himself various loans and gifts from the trust, urged the probate court to appoint a new professional fiduciary as the sole successor trustee given the history of disagreements between himself and his sister over the administration of the trust. In May 2023, the probate court issued an order granting Robert G.'s request. Citing Probate Code section 17200,[2] the court appointed a professional fiduciary as the temporary successor trustee for the entire trust (including both sub-trusts), explaining that the appointment was intended to minimize disputes between the siblings and the remainder beneficiary of the trust (Robert G.'s son, Michael).

On appeal, Hyldi argues reversal is required because the probate court's order violated section 15660, which speaks to filling a vacancy in the office of trustee. Hyldi contends the express language of that statute mandates her appointment as the successor trustee of her sub-trust pursuant to the terms of the trust instrument. She adds that any

---

[1] Because all of the family members in this case share the same last name, we refer to them by their first names to avoid confusion. Further, because father and son share the same first name, we add their middle initial--Robert R. (father) and Robert G. (son).

[2] Undesignated statutory references are to the Probate Code.

arguments that she should not be appointed as the successor trustee are barred by the doctrine of issue preclusion. As we next explain, we disagree and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

We do not attempt to provide a detailed recitation of the various disputes between the siblings over the administration of the family trust. Instead, we summarize the pertinent facts and procedure.

*The Family Trust*

Robert R. Vieira and Cleo Vieira (collectively, the settlors) had two children, Robert G. and Hyldi. Hyldi has no children, and Robert G. has one child, Michael. The settlors were in the business of cattle ranching.

In June 1997, the settlors created the Robert and Cleo Vieira Family Trust (A Revocable Inter Vivos Trust) (hereafter, the trust). They served as the original cotrustees of the trust.

We summarize only the relevant terms of the trust. Under these terms, the settlors' children, Robert G. and Hyldi, were to serve as successor cotrustees if both settlors failed to qualify or ceased to serve as trustee. If either child failed to qualify or ceased to serve as trustee, the other was to serve as the sole successor trustee. The trust instrument further provided that, upon the death of both settlors, the trustee(s) must divide the trust estate into as many equal shares as there are children of the settlors, and to fund a sub-trust for the benefit of each child.[3] The settlors' children were designated as the income beneficiaries of the sub-trusts for life, with each having the right to receive distributions of trust principle for their proper support, care, maintenance, and education. The trust instrument specified that the settlors' grandchildren were the remainder

---

[3] The trust instrument identifies the sub-trusts as the Grandchildren's Generation Skipping Tax Exempt Trusts. Consistent with the briefing in this matter, we refer to the respective sub-trusts as Robert G.'s sub-trust and Hyldi's sub-trust.

beneficiaries of their children's respective sub-trusts, and that if either child had no children, then their sibling was the remainder beneficiary. Thus, because Hyldi has no children, Robert G. is the remainder beneficiary of her sub-trust.

As of the most recent accounting in the record (June 2022), the trust's assets had a market value in excess of $6 million. The assets included multiple parcels of real property, various stocks, investment accounts, several promissory notes, and a 2 percent general partnership interest in Vieira Ranch Investments (VRI), a limited partnership formed by the settlors in December 2001.[4] VRI is a land holding company with assets that include approximately 3,500 acres of cattle grazing land near the Altamont Pass in Livermore (sometimes referred to as the VRI Ranch). The trust's 2 percent interest in VRI was valued at approximately $1.2 million, making VRI's total value approximately $59 million.

The operation, management, and dissolution of VRI is governed by a limited partnership agreement. When the agreement was formed in 2001, it granted a 2 percent general partner interest to the trust and a 98 percent limited partner interest to the settlors as individuals. However, before the settlors passed away, they granted Robert G. and Hyldi, each, a 49 percent limited partner interest free of the trust. It is undisputed that, at all relevant times after the creation of the trust and prior to the creation of the sub-trusts (i.e., from 1997 to 2023), the trustee(s) of the trust held the 2 percent general partner interest in VRI, and thereby controlled all assets of VRI. Consistent with the terms of the trust instrument, each sub-trust currently holds a 1 percent general partner interest in VRI.

_____

[4] As set forth in the limited partnership agreement, the purpose of the partnership was to "initially place cattle raising and raw land property in the Partnership and thereafter potentially invest in other assets, real and personal, make a profit, increase wealth, and provide a means for the Family to become knowledgeable of, manage, and preserve Family Assets."

4

During Robert R.'s lifetime, he and his son (Robert G.) leased the VRI Ranch and managed a cattle operation on that land. After Robert R. passed away, Robert G. continued the ranching operation. According to Robert G., Hyldi has never been involved in the operation or management of VRI. The record makes clear that Hyldi does not believe VRI is a prudent investment.

*Appointment of Robert G. as Successor Trustee*

In February 2007, the settlors executed an amendment to the trust, appointing their son (Robert G.) as cotrustee with his mother (Cleo). This amendment was executed shortly after Robert R. suffered a fall following a major neurological event that left him cognitively impaired. Thereafter, Robert G., as successor cotrustee, made various loans and gifts from the trust to himself. According to Hyldi, Robert G. did not inform her about the amendment to the trust until the fall of 2011.

In February 2008, Robert R. passed away.

*Appointment of Lisa Berg as Successor Trustee and Robert G.'s Accounting*

In March 2012, the probate court issued an order removing Robert G. and Cleo as co-trustees and appointed Lisa Berg, a professional fiduciary, as the temporary successor trustee. The trial court also ordered Robert G. to provide an accounting for the time period during which he acted as cotrustee.

It is not disputed that Robert G. was removed as cotrustee due to his actions in administering the trust[5] and Cleo was removed as cotrustee due to her poor health. The record does not include a court order or other evidence (e.g., reporter's transcript)

---

[5] The record does not include a court order explaining why Robert G. was removed as cotrustee. According to Hyldi, Robert G. was removed due to his "misconduct" in administering the trust, which consisted of his transferring hundreds of thousands of dollars from the trust to his personal accounts.

explaining why the probate court did not appoint Hyldi as the successor trustee or as a successor cotrustee, as contemplated by the terms of the trust instrument.

In November 2012, Robert G. filed an accounting.

*Mediation and Stipulation*

The probate court found Robert G.'s accounting insufficient because, among other things, it failed to adequately explain the loans and gifts he had given to himself from the trust. The siblings and others, including Robert G.'s son and Berg, then agreed to participate in mediation to resolve their disputes related to the accounting. The mediation resulted in a stipulation and mutual release of all claims related to the administration of the trust.

The stipulation, which was entered into in October 2014, contained various terms including Robert G.'s agreement to repay the trust $150,000 in full satisfaction of the outstanding loans he had given himself,[6] and Hyldi's and Berg's agreement to withdraw their objections to Robert G.'s accounting. The parties also agreed that Berg could be replaced as the successor trustee only by a "licensed private fiduciary in the event of a resignation or other vacancy in office," and that any disputes concerning the interpretation of the stipulation must be "referred to the mediator for determination in the manner of binding arbitration." With respect to VRI, the parties agreed that the stipulation had "no force or effect," and that Robert G. and Hyldi "reserve[d] their rights as limited partners under the laws governing California limited partnerships, including, but not limited to, enforcing fiduciary obligations of general partners of the partnership."

In January 2015, Cleo passed away.

---

[6] Robert G. also agreed to assign his $750,000 interest in a life insurance policy to the trust.

6

*Arbitration and Stipulation*

In November 2015, the parties referred two matters to the mediator/arbitrator concerning the interpretation of the stipulation executed after mediation. Of relevance here, the parties asked the mediator/arbitrator to decide whether the language of the stipulation precluded Hyldi from serving as the successor trustee of the trust or any sub-trust following Cleo's death. The relevant language of the stipulation (paragraph 9) stated: "The Successor Trustee [(i.e., Berg)] may be replaced only by a licensed private fiduciary in the event of a resignation or other vacancy in office."

After briefing and argument, the mediator/arbitrator ruled as follows: "The discussion which led to the drafting of paragraph 9 limiting the class of eligible replacements for successor trustee of the Family Trust did not address the creation of sub trusts following the death of Cleo . . . and, therefore, did not ipso facto preclude Hyldi from serving as trustee of the sub trust to be created for her share of the trust estate." In so ruling, the mediator/arbitrator explained that "the parties' focus" during mediation had been on "the management of the Family Trust during the lifetime of Cleo, who passed away after the mediation concluded," and that the current issue was "whether the hostility between [Robert G. and Hyldi was] such that neither should be placed in charge of the Family Trust even though their parents saw fit to designate them as potential successor trustees under [the terms] of the 1997 [trust] instrument." The mediator/arbitrator further explained that while there was "obvious discord" between the siblings, and that "given the history of this matter, it might be advisable to insulate the siblings from constantly scrutinizing each other's management of his or her trust by inserting an independent trustee for each trust," there was no apparent reason to "conclude that Hyldi could not serve as trustee of her own [sub] trust, even though Robert [G.] would be a potential remainder beneficiary of her sub trust.

In January 2016, the trial court approved a stipulation requesting that the findings of the mediator/arbitrator be "confirmed."

7

*Petition for Instruction*

In October 2022, in anticipation of her retirement, Berg filed a petition for instruction under section 17200. Of significance here, Berg requested the probate court issue an order authorizing her to equally divide the trust's assets into two sub-trusts, one for the benefit of Hyldi and the other for the benefit of Robert G.[7] Berg also requested an order appointing the Bank of Stockton as the new temporary successor trustee until the parties (including Michael) could agree on a successor trustee for each of the sub-trusts. In making these requests, Berg explained that her proposed asset division was consistent with the terms of the trust instrument, and that the parties did not agree as to the appointment of a successor trustee for either sub-trust. Berg further explained that the appointment of the Bank of Stockton would allow her to fund the sub-trusts as she proposed.

*The Responses to the Petition for Instruction*

Hyldi filed an objection to Berg's petition for instruction, arguing in part that the appointment of the Bank of Stockton as the new successor trustee would be contrary to the terms of the trust instrument and the express language of section 15660, which, she argued, required that she be appointed as the trustee of her sub-trust. Hyldi added that such an appointment would also violate the terms of the stipulations executed by the parties after mediation and arbitration.

Robert G. and Michael filed separate written responses wherein they agreed with Berg's request for the appointment of the Bank of Stockton (or some other neutral

---

[7] In connection with this request, Berg proposed to retain a reserve in the existing trust to pay for expenses related to the disputes about her administration of the trust. No party objected to this proposal. Nor did any party object to Berg's proposal to create two sub-trusts and to equally divide the trust's assets among those sub-trusts.

professional fiduciary) as the new successor trustee.[8]  As part of his response, Robert G. argued that absent such an appointment, the beneficiaries of the trust would be unable to reach an agreement on any issue related to the administration of the trust.  In making this argument, Robert G. explained that Hyldi had a history of "contesting every proposed action" (including objecting to each and every accounting of the trust), and that her "objective" was to "terminate the Trusts and VRI" and "liquidate the family ranching business," which would be contrary to the intent of the settlors.  According to Robert G., if Hyldi were appointed as the successor trustee of her sub-trust, she would have the power to "intentionally cause [the] dissolution" of VRI by refusing to confirm a new general partner for VRI, thereby "doom[ing]" the family ranch.  To avoid this outcome, Robert G. insisted that a professional fiduciary be appointed as the new successor trustee.  Alternatively, in the event the probate court decided to appoint Hyldi as the successor trustee of her sub-trust, Robert G. asked the court to allocate the trust's 2 percent general partnership interest in VRI to his sub-trust (as opposed to allocating a 1 percent general partnership interest to each sub-trust).  In support of his position, Robert G. asserted that not only had Hyldi (who was 55 years old with no children) advocated for liberal distribution of trust principal, but she also had no incentive to preserve trust principal for his minor son (Michael), the only remainder beneficiary of the trust.

For his part, Michael also raised concerns about Hyldi being appointed as the successor trustee of her sub-trust, explaining that she had a history of "requesting significant amounts of trust principal from the Trustee," and that, based on "her liberal

---

[8]  In his response, Michael alternatively requested that Robert G. and Hyldi be appointed as successor cotrustees, with each serving as the trustee of their own sub-trust.  However, Michael noted that, "given the contentious history between Robert [G.] and Hyldi, [he] believe[d] it would be more prudent to appoint a neutral professional fiduciary to serve as trustee of each subtrust," particularly "in light of pending issues facing the trustee, namely; allocation of Trust assets to the subtrusts, including allocation of the Trust's VRI general partnership interest."

approach to invasion of principal," she would "almost certainly" deplete his remainder interest and "generate[] continuous litigation as to the propriety of her distributions." To preserve VRI and the family's ranching business as the settlors intended, Michael, like Robert G., requested that the trust's 2 percent general partner interest in VRI be allocated entirely to Robert G.'s sub-trust, with Hyldi "being made whole by an allocation of a greater share of the equities to her subtrust." In making this request, Michael noted that Hyldi has made it clear that she would act to "dissolve VRI" if the trust's 2 percent general partnership was divided equally among the sub-trusts.[9]

Berg filed a response to Hyldi's objection, explaining that even though the surviving settlor/spouse (Cleo) had died approximately eight years earlier, the sub-trusts had yet to be created and funded (as contemplated by the express terms of the trust instrument) because the parties could not agree on how the trust's assets should be allocated. In so explaining, Berg noted that Hyldi had objected to "nearly every" action that she had taken since her appointment as the temporary successor trustee in 2012. Berg further noted, as she had in her response to Hyldi's objection to the fifth accounting prepared by Berg two years earlier, that although allocation of the trust's assets into two sub-trusts should be a simple process, "it [had been] made more difficult because of the history and disagreement between [the siblings]," which "demonstrate[d] that neither could work together in managing any assets which potentially could be jointly owned between the two sub-trusts."

---

[9] Hyldi filed a written response to Robert G.'s brief. Among other things, Hyldi reiterated her argument that she should be appointed as the successor trustee of her sub-trust under section 15660. She also noted that Robert G.'s assertion that she would "raid" the principal of her sub-trust was "simply untrue," and provided various reasons why Robert G.'s argument that VRI was "doomed" if she was named successor trustee was meritless.

*First Hearing on the Petition for Instruction*

In February 2023, after the Bank of Stockton declined to accept appointment as the new successor trustee and a hearing was held on Berg's petition for instruction,[10] the probate court issued an order stating that it would select a successor trustee to serve as the trustee for both sub-trusts. The court ordered the parties to identify a corporate or licensed professional fiduciary who had agreed to serve in that capacity, invited further briefing on the appointment of a new successor trustee, and set the matter for hearing.

Thereafter, Robert G. and Michael nominated Heather Fisher (a licensed professional fiduciary) to serve as the new successor trustee, and Robert G. submitted further briefing on Berg's petition for instruction. For her part, Hyldi did not identify any professional fiduciary. Instead, she submitted a brief in which she again requested that she be appointed as the successor trustee of her sub-trust pursuant to the terms of the trust instrument. Without elaboration or reasoned legal analysis, Hyldi claimed the parties had already litigated ("via binding arbitration") the issue of whether she was entitled to be appointed as the successor trustee of her sub-trust under the terms of the trust instrument, with the arbitrator deciding that she was not "preclude[d]" from serving as trustee of her own sub-trust. According to Hyldi, because this "issue ha[d] already been litigated and decided," the arbitrator's "decision should be given res judicat[a] and/or collateral estoppel effect." Hyldi did not object to the appointment of a professional fiduciary to serve as the successor trustee for Robert G.'s sub-trust.

---

[10] The appellate record does not include a reporter's transcript for this hearing, which occurred in December 2022.

*Second Hearing on the Petition for Instruction and Probate Court's Ruling*

In April 2023, after further briefing and a second hearing, the probate court issued a tentative ruling.[11] Pursuant to section 17200, the court appointed Fisher as the new temporary successor trustee. The court also ordered that the trust's assets be divided equally among the sub-trusts as proposed by Berg, with a reserve retained in the existing trust for expenses related to the resolution of the ongoing disputes regarding the administration of the trust. In so ruling, the court explained: "This order is intended to minimize disputes between Robert [G.] and Hyldi, as the two lifetime beneficiaries and Michael, as the remainder beneficiary, as to what should be allocated to each [sub-trust] and the value of those assets." The court did not make any ruling as to Hyldi's undeveloped res judicata/collateral estoppel argument. No party objected to the tentative ruling.

In May 2023, the probate court adopted the tentative ruling as the final order. No party objected to the final order or moved for reconsideration of that order.

Hyldi timely appealed.

---

[11] In a supplemental brief, Hyldi again cursorily argued that the arbitrator's finding she was not precluded from being appointed as the successor trustee of her sub-trust should be given "res judicat[a] and or collateral estoppel effect." At the second hearing on Berg's petition for instruction, Hyldi's counsel mentioned that it was Hyldi's position that the ruling after arbitration had "res judicata collateral estoppel effect going forward," and therefore Hyldi was entitled to be appointed as the successor trustee of her sub-trust. Alternatively, Hyldi's counsel indicated that if the court was not inclined to appoint Hyldi as the successor trustee of her sub-trust, she requested the appointment of two professional fiduciaries, one to administer each sub-trust.

## DISCUSSION

## I

### *Appointment of New Temporary Successor Trustee*

Hyldi's primary contention is that reversal is required because the probate court's order appointing a professional fiduciary as the new temporary successor trustee violated section 15660. She argues the express language of the statute mandates that she be appointed to serve as trustee of her sub-trust pursuant to the terms of the trust instrument.

A. *Relevant Legal Principles and Standard of Review*

A probate court has broad equitable powers to supervise the administration of a trust and an estate. (See *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427-429.) (*Schwartz*).) The court has the responsibility "to protect the estate and ensure its assets are properly protected for the beneficiaries." (*Estate of Ferber* (1998) 66 Cal.App.4th 244, 253.) The court's powers include "the duty to supervise the internal affairs and administration of trusts." (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1144.)

"Proceedings in the probate court 'concerning the internal affairs of the trust' are commenced with the filing of a petition." (*Schwartz, supra,* 164 Cal.App.4th at p. 427; see §§ 17201, 17200, subd. (a).) Section 17200 defines proceedings "concerning the internal affairs of a trust" to include, as relevant here: "Instructing the trustee"; "Appointing or removing a trustee"; and "Accepting the resignation of a trustee." (§ 17200, subd. (b)(6), (10) & (11).)

A trustee who has accepted the trust may resign only by one of several statutorily enumerated methods, including (as relevant here) pursuant to a court order obtained on petition by the trustee under section 17200. (§ 15640, subd. (d).) The court must accept the trustee's resignation and may make any orders necessary for the preservation of the trust property, including the appointment of a receiver or a temporary trustee. (*Ibid.*)

13

Under section 15660, the focus of the appellate challenge here, if there is a vacancy in the office of trustee (which includes resignation of the trustee (§ 15643, subd. (c)), "the vacancy *shall* be filled as provided in the trust instrument," so long as the trust instrument provides a practical method of appointing a trustee or names the person to fill the vacancy. (§ 15660, subd. (b).) If the vacancy in the office of trustee is not filled in this manner, "the vacancy may be filled by a trust company that has agreed to accept the trust on agreement of all adult beneficiaries who are receiving or are entitled to receive income under the trust or to receive a distribution of principal if the trust were terminated at the time the agreement is made." (§ 15660, subd. (c).) If the vacancy in the office of trustee is not filled in either of the manners described, "on petition of any interested person or any person named as trustee in the trust instrument, the court may, in its discretion, appoint a trustee to fill the vacancy. If the trust provides for more than one trustee, the court may, in its discretion, appoint the original number or any lesser number of trustees. In selecting a trustee, the court shall give consideration to any nomination by the beneficiaries who are 14 years of age or older." (§ 15660, subd. (d).)

Presented with a section 17200 petition, the probate court "in its discretion may make any orders and take any other action necessary or proper to dispose of the matters presented by the petition, including appointment of a temporary trustee to administer the trust in whole or in part." (§ 17206.) Discretion is abused only when the court " 'exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) In reviewing the factual determinations underlying the court's exercise of its discretion, we apply the substantial evidence test. (See *Adoption of Matthew B*. (1991) 232 Cal.App.3d 1239, 1254.) In so doing, we accept all evidence that supports the prevailing party, disregard

the contrary evidence, and draw all reasonable inferences to uphold the judgment. (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.) "[I]t is not our role to reweigh evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." (*Ibid.*)

Although " 'the probate court has wide, express powers to "make any orders and take any other action necessary or proper to dispose of the matters presented" by [a] section 17200 petition,' " the court "must exercise those powers 'within the procedural framework laid out in the governing statutes' of the Probate Code." (*Babbitt v. Superior Court*, *supra*, 246 Cal.App.4th at p. 1144.) We review the probate court's construction of the governing statutes de novo. (*Ibid.*)

B. *Analysis*

Here, there is no dispute that hostility and animosity existed between Robert G. and Hyldi. Indeed, the record reflects a long history of contention over the proper administration of the trust, including costly litigation. Although unclear from the record, the probate court's 2012 order appointing a professional fiduciary (Berg) to serve as the sole temporary successor trustee rather than Hyldi, strongly suggests that the court believed only a neutral trustee could properly administer the trust after Robert G. and Cleo were removed as cotrustees. Berg served in that capacity for over 10 years until she was preparing to retire and requested instruction from the probate court on the appointment of a new successor trustee. In connection with her petition, Berg explained that she was unable to accomplish the "simple process" of equally dividing the trust's assets into two sub-trusts after Cleo passed away in 2015 because of the "history and disagreement" between the siblings, which, in Berg's view, demonstrated that neither could work together in managing the trust's assets, some of which could potentially be allocated in a manner resulting in joint ownership. Among the siblings' disagreements included the appointment of a new successor trustee to serve as the trustee of Hyldi's

15

sub-trust. Because the parties (including Michael as the remainder beneficiary) could not agree on this issue, Berg requested the appointment of a temporary neutral professional fiduciary to administer the trust (including both sub-trusts).

Because no objections were made to the trial court's statement of decision, we imply findings to support the decision. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

On this record, it is reasonable to infer that the probate court's decision to appoint a professional fiduciary (Fisher) as the new temporary successor trustee was based on the implied finding that the siblings had an acrimonious and contentious relationship that prevented them from working together and cooperating with each other. We may also infer that the probate court impliedly found that, given the siblings' antagonistic relationship, the proper administration of the trust and the preservation of the trust's assets could only be accomplished by the appointment of an impartial professional trustee. We accord the probate court's implied findings substantial deference and conclude the court did not abuse its discretion in appointing a professional fiduciary as the sole temporary successor trustee.

We are not persuaded by Hyldi's contention that reversal is required because the trial court lacked "discretion under . . . section 15660 to disregard the plain language of the Trust when deciding whom to appoint a[s] successor trustee." In making this argument, Hyldi relies on the following language set forth in section 15660: "If the trust instrument provides a practical method of appointing a trustee or names the person to fill the vacancy, the vacancy *shall* be filled as provided in the trust instrument." (§ 15660, subd. (b), italics added.) Although couched in mandatory terms, Hyldi cites no case law or other authority supporting the conclusion that the probate court was *required* to appoint her to serve as the successor trustee of her sub-trust. She has not directed us to any authority holding that reversal is required because the probate court lacked the power/discretion to appoint a professional fiduciary as the new temporary successor

16

trustee under the circumstances presented. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) In any event, as we next explain, no basis for reversal appears.

As noted *ante*, a probate court has broad equitable powers to supervise the administration of a trust. (*Schwartz*, *supra*, 164 Cal.App.4th at pp. 427-429; *Estate of Ferber, supra*, 66 Cal.App.4th at p. 253.) When, as here, a probate court is presented with a section 17200 petition, it has the discretion to "make any orders and take any action necessary or proper to dispose of the matters presented by the petition . . . ." (§ 17206; see *Schwartz*, *supra*, 164 Cal.App.4th at p. 427 [probate court has "wide, express powers" to dispose of the matters presented by a § 17200 petition].) Here, Berg filed a section 17200 petition for instruction, which requested an order appointing a professional fiduciary as the new successor trustee to administer the trust due to her impending retirement. Under the express terms of the trust instrument, if both settlors ceased to serve as trustee (which occurred in 2012), then their children (Robert G. and Hyldi) were to serve as cotrustees, and that if either sibling failed to qualify or ceased to serve as trustee, then the other was to serve as sole trustee. In the trial court, the siblings agreed that Robert G. was not qualified to serve as trustee or cotrustee given his removal as cotrustee in 2012 and the stipulation executed by the parties after mediation in 2014. The siblings also agreed that a professional fiduciary should be appointed as the trustee of Robert G.'s sub-trust. The siblings (and Michael), however, disagreed as to whether Hyldi should be appointed as trustee of her sub-trust, with Robert G. and Michael taking the position that she was not qualified to do so given the parties' long history of disputes over the proper administration of the trust. Thus, in disposing of the matter presented in the section 17200 petition, the probate court was confronted with the question of whether

17

it was appropriate to appoint Hyldi as the successor trustee of her sub-trust. Resolution of this issue necessarily triggered the court's duty to determine whether Hyldi was qualified to serve in that capacity.

In rejecting Hyldi's request to be appointed as the successor trustee of her sub-trust, the probate court implicitly found that she was not qualified to serve in that capacity based on the hostility and antagonism between her and Robert G. Substantial evidence in the record supports that finding. For her part, Hyldi offers no reasoned legal argument demonstrating that a contrary result is warranted. And we discern no basis for reversal. Indeed, it is well settled that a probate court has the authority to remove a trustee sua sponte (§ 15642, subd. (a); *Schwartz*, *supra*, 164 Cal.App.4th at p. 427) where it is shown that hostility or antagonism between the trustee and the beneficiary "impairs the proper administration of the trust." (*Estate of Gilmaker* (1962) 57 Cal.2d 627, 632-633; see *Copley v. Copley* (1981) 126 Cal.App.3d 248, 288 ["Hostility, antagonism and inevitable future conflict can justify an order of removal of the trustee when those factors impair the proper administration of the trust"].) Thus, it logically follows that the probate court had the authority to appoint a private fiduciary to serve as the new temporary successor trustee. Such authority is consistent with the broad equitable powers a probate court has to supervise the internal affairs and administration of a trust, including preservation of the trust. (See *Schwartz, supra*, 164 Cal.App.4th at p. 429 [probate court has "extensive, general express, and inherent equity powers"]; *Getty v. Getty* (1988) 205 Cal.App.3d 134, 141-142 [the probate court has the authority to remove a trustee entirely in the exercise of its general equity jurisdiction].) We discern no error.

## II

### *Remaining Contention*

We reject Hyldi's remaining contention that the doctrine of issue preclusion barred Robert G. and Michael from arguing that Hyldi should be prohibited from serving as the successor trustee of her sub-trust. As an initial matter, we deem this argument forfeited

18

because it was not properly raised in the probate court. Hyldi did not make an issue preclusion argument in the briefing she submitted in connection with the first hearing on Berg's petition for instruction. Prior to the second hearing on Berg's petition, Hyldi raised the point only in a conclusory manner, without reasoned argument supported by citation to authority. In short, because Hyldi's issue preclusion argument was not adequately developed in the trial court, it was not preserved for appeal. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [undeveloped argument raised in a "cursory manner" and buried within another argument did not adequately raise the issue in the trial court or preserve the issue for appeal].) Moreover, even if the argument had been properly raised below, Hyldi forfeited appellate consideration of the argument by failing to object to the probate court's tentative ruling or move for reconsideration of that ruling (which implicitly rejected the argument) after it was deemed the final order. (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 911-912 [failure to object to tentative ruling or otherwise alert trial court of its failure to expressly rule on an issue results in forfeiture of issue on appeal].)

Forfeiture aside, Hyldi's issue preclusion argument fails on its merits. Issue preclusion prohibits the relitigation of issues argued and decided in a previous case. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Issue preclusion applies only: " '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' " (*Id*. at p. 825; see also *Samara v. Matar* (2018) 5 Cal.5th 322, 327.) Whether issue preclusion applies in a particular case is a question of law. (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325.)

Here, the relevant issue litigated in arbitration was whether the language of paragraph 9 of the stipulation executed by the parties after mediation in 2014 precluded Hyldi from serving as the successor trustee of the trust or any sub-trust created after Cleo (the surviving spouse/settlor) passed away in 2015. As previously indicated, paragraph 9

of the stipulation stated: "The Successor Trustee [(i.e., Berg)] may be replaced only by a licensed private fiduciary in the event of a resignation or other vacancy in office." After briefing and a hearing, the meditator/arbitrator determined that the language of this paragraph "did not ipso facto preclude Hyldi from serving as trustee of the sub trust to be created for her share of the trust estate." In making this determination, the mediator/arbitrator explained that "[t]he discussion which led to the drafting of paragraph 9 limiting the class of eligible replacements for successor trustee of the [trust] did not address the creation of sub trusts following the death of Cleo . . . ." By contrast, in the probate court, the relevant issue the parties litigated in connection with Berg's petition for instruction was *who* should be appointed to serve as the successor trustee(s). Robert G. and Michael both requested the appointment of a professional fiduciary to serve as the new successor trustee. Although Hyldi did not object to the appointment of a professional fiduciary to serve as successor trustee of Robert G.'s sub-trust, she requested that she be appointed to serve as the successor trustee of her sub-trust. At no point did Robert G. or Michael argue that Hyldi was precluded from serving (or ineligible to serve) as the successor trustee of her sub-trust based on language of the stipulation entered after mediation. And, in deciding to appoint a professional fiduciary as the new temporary successor trustee, the probate court did not rely on paragraph 9 of the stipulation executed after mediation. In short, because the issue decided by the probate court was not identical to the issue actually litigated and decided in arbitration, the doctrine of issue preclusion does not apply.

## DISPOSITION

The order appointing Fisher as the new temporary successor trustee of the trust is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                             /s/
                                    Duarte, J.



We concur:




       /s/
Hull, Acting P. J.




       /s/
Renner, J.

21