Filed 5/23/25  Donkin v. Federizo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| RODNEY E. DONKIN, JR., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>AILEEN FEDERIZO, as Interim Trustee, etc.,<br><br>Defendant and Respondent. | B321793<br><br>(Los Angeles County Super. Ct. No. BP109463)<br><br>ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT); ORDER DENYING APPELLANT'S PETITION FOR REHEARING |

The opinion in the above-entitled matter filed on April 28, 2025 is modified as follows:

The last paragraph on page 12 is deleted and replaced with the following paragraph:

Appellants cite no authority—nor are we aware of any—suggesting the power of an interim trustee is necessarily less than that of a trustee, absent some specific restrictions in either the order

appointing the interim trustee or the trust.  (See *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 425, fn. 5 ["[f]or purposes of this case, we see no distinction between a 'successor trustee' and a successor trustee whose appointment was of 'interim' power or duration, until a full hearing is held"].)

This modification does not constitute a change in judgment.

Appellant Rodney E. Donkin, Jr.'s petition for rehearing filed on May 13, 2025 is denied.

_____

ROTHSCHILD, P. J.          BENDIX, J.          WEINGART, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RODNEY E. DONKIN, JR., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>AILEEN FEDERIZO, as Interim Trustee, etc.,<br><br>Defendant and Respondent. | B321793<br><br>(Los Angeles County Super. Ct. No. BP109463) |

APPEAL from orders of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

Rodney E. Donkin, Jr., in pro. per., for Plaintiff and Appellant.

Vicki R. Donkin, in pro. per., for Plaintiff and Appellant.

Rodnunsky & Associates and Yevgeny L. Belous for Defendant and Respondent.

Appellants Rodney E. Donkin, Jr. (Rodney Jr.) and his wife Vicki R. Donkin appeal from two probate court orders regarding Rodney Jr.'s[1] parents' trust. The orders instruct respondent Aileen Federizo, interim trustee, to sell certain real property in the trust and to liquidate the trust's assets. We find no error and affirm.

## SELECTED FACTUAL AND PROCEDURAL BACKGROUND

The instant probate litigation spans multiple decades, multiple Court of Appeal decisions, and one California Supreme Court decision. We focus on only events and trust provisions central to the issues raised on appeal. Additional details regarding the terms of the trust and the trust litigation can be found in our prior opinions. (See *Donkin v. Federizo* (May 30, 2024, B323043) [nonpub. opn.]; *Donkin v. Donkin* (2020) 47 Cal.App.5th 469; *Donkin v. Donkin* (Mar. 29, 2017, B266036) [nonpub. opn.].)

### A.  *The Trust*

In August 1988, Rodney Jr.'s parents, Rodney E. Donkin, Sr. (Rodney Sr.) and Mary E. Donkin, a married couple, executed a revocable trust as part of their estate plan. In 2002, Rodney Sr.

---

[1] Because numerous individuals involved in this litigation have (or at one time had) the surname Donkin, we refer to all Donkin family members by their first names. No disrespect is thereby intended.

2

died.  In 2005, Mary died.  This rendered all portions[2] of the trust irrevocable.

The trust names the trustors' children, Rodney Jr., Lisa, and Annemarie, as the primary beneficiaries.  It provides that, " 'upon the death of the surviving spouse [here,] Mary, the trustee [or trustees] shall hold, administer and distribute the trust,' " including allocating shares thereof to the primary beneficiaries in the manner set forth therein, and thereafter " 'distribut[ing] the shares allocated to primary beneficiaries outright as soon as is practicable.' "  The trust grants the trustee the power to "distribute the shares of the . . . trust[ ] to beneficiaries . . . in cash, or in kind, or partly in cash and partly in kind, or in undivided interests, in such a manner as the trustee in his or her sole and absolute discretion deems advisable" and to sell any property "as it deems necessary to make such division or distribution."  (Capitalization omitted.)  Mary's amendment to certain sub-trusts created after Rodney Sr.'s death (see fn. 2, *ante*) similarly permits the trustee, after all trust obligations are satisfied, to "have the complete discretion whether to keep the assets of [those sub-trusts] intact and continue to manage them," liquidate and distribute them, or liquidate and manage the liquidated funds.

The trust includes a "no litigation" clause, commonly referred to as a "no-contest clause," which states that, "if a

---

[2] The trust provides that, upon the death of the first-to-die trustor, the trust is divided into sub-trusts, only one of which is immediately irrevocable, the other sub-trusts remaining revocable by the surviving trustor.  Thus, following Rodney Sr.'s death, Mary retained the right to amend the revocable sub-trusts, which she did.

beneficiary . . . should legally challenge this trust, its provisions, or asset distributions, then all asset distributions to said challenging beneficiary shall be retained in [the] trust and distributed to the remaining beneficiaries herein named, as if said challenging beneficiary and his or her issue had predeceased the distribution of the trust estate." (Capitalization omitted.) Mary also included such a clause in her amendments of certain sub-trusts.

## B.    *Suspension of Appellants as Trustees*

The trust provides that, upon the death of both trustors, Rodney Jr., Lisa, Annemarie, or Craig Donkin may "serve as successor trustees . . . without the approval of any court." (Capitalization omitted.) Appellants " 'were named as "first" co-successor trustees, while Lisa and Annemarie were . . . "second" co-successor trustees.' "

After Mary's death in 2005, appellants began serving as trustees. In 2010, Annemarie and Lisa filed a Probate Code section 17200[3] petition seeking removal of appellants as trustees, apparently based on allegations that the informal accountings appellants had provided were "inadequate and disclose[d] inappropriate transactions."[4] In August 2015, Annemarie and

---

[3] Unless otherwise indicated, all further statutory references are to the Probate Code.

[4] Appellants do not provide a valid citation to the record for this petition, nor were we able to locate the petition in the record during our independent review. We therefore base our characterization of the petition on other documents discussing it, and on appellants' representations to this court. Appellants further represent, again without citation to the record, that

4

Lisa filed a section 850 petition alleging appellants had breached their fiduciary duties as trustees by "entering into financial arrangements . . . which would amount to constructive fraud upon the interests of the petitioning beneficiaries."[5]

At an August 20, 2015 hearing (at which appellants appeared), the court ordered appellants "to file a response to the court's statement of its intention to remove them as trustees, and to appear and show cause why they should not be removed." (Capitalization omitted.) Appellants did not appear at the subsequent hearing on the order to show cause, nor did they file any response to the order to show cause.

On September 28, 2015, the court suspended appellants as trustees.[6] The court's order did not identify any specific duration for appellants' suspension, nor did the court tie the suspension to the resolution of some other issue in the litigation. In the same order, the court named Annemarie as the interim trustee.

---

in 2023, the court dismissed this petition for failure to timely prosecute it. (See Code Civil Proc., §§ 583.310 & 583.360, subd. (a).)

[5] Shortly before trial was scheduled to begin on this petition approximately six years later, the court dismissed it for failure to timely prosecute. (See Code Civ. Proc., §§ 583.310 & 583.360, subd. (a).)

[6] The record does not identify the basis for suspending appellants as trustees or for the court's order to show cause why appellants should not be removed as trustees. Appellants characterize their ultimate suspension as based on the claims set forth in Annemarie and Lisa's 2010 section 17200 petition and August 2015 section 850 petition, discussed above. In any event, the basis for the suspension is not material to our analysis.

On September 29, 2015, appellants filed with the probate court a document addressing the effects of then-pending appeals and asked the court to set aside the suspension order "pursuant to Civil Code [s]ection 473(b), for mistake and excusable neglect and/or to correct its order for lack of jurisdiction pending the resolution of the appealed orders." The court declined to do so.

According to appellants, they failed to follow court orders regarding required accountings and failed to respond to the order to show cause as to why they should not be removed as trustees because they mistakenly and in good faith believed that the court lacked jurisdiction to issue these orders as a result of then-pending appeals from other orders in the probate proceedings. Appellants sought a declaration to this effect via a petition for writ of supersedeas filed with this court. After we summarily denied that writ petition, appellants filed a January 14, 2016 pleading with the probate court that, inter alia, provided the requested formal accounting and asked that the court reinstate appellants as trustees (the reinstatement request).[7] In the years that followed, the court repeatedly continued the hearing on the reinstatement request.

### C. *Appointment of Respondent as Interim Trustee*

On October 4, 2016, Annemarie, acting as interim trustee, petitioned the probate court to allow her to sell certain real

---

[7] The January 14, 2016 filing is captioned: "[V]erified First Account and Report of the administration of the Trust for the period February 5, 2005 through July 9, 2015 and Petition for Its Settlement; For Approval of Trustee Fees and Reimbursements; For Allowance of Attorney Fees and Costs; and Petition for Reinstatement of Successor Trustees."

property and to make a hardship distribution to Lisa. The appellants filed an opposition to the petition. On July 31, 2018, the court responded to the petition by appointing Aileen Federizo, "a licensed private professional fiduciary," "as trustee of the trust for the limited purposes of selling and/or managing the real property of the trust with the powers contained in the trust instrument(s)." (Capitalization omitted.) On December 13, 2018, the court ordered, without qualification, that respondent "is appointed interim trustee of the . . . trust, . . . as amended." (Capitalization omitted.) Respondent has served continuously as the interim trustee ever since.

### D. *Petitions and Orders Thereon Underlying the Instant Appeal*

On May 7, 2019, Annemarie filed a section 17200 petition for an order instructing the interim trustee (respondent) to terminate and distribute the trust (the liquidation petition). The petition specifically proposed a portion of the liquidated assets "be ordered distributed to the children of the trustors [Annemarie, Lisa, and Rodney Jr.] outright, per the trust terms as they existed at the death of Rodney Sr. With regard to the [portion of the trust] which provides for discretionary distributions during the lives of those same three beneficiaries, with the remainder, if any, to the grandchildren of the trustors, [Annemarie] propose[d] that ninety percent (90 [percent]) of [that portion of the trust] be distributed to the children of the trustors, with the remainder to the grandchildren." (Capitalization omitted.)

On May 5, 2021, respondent filed a section 17200 "petition for instructions and for order directing [her] to sell real property"

7

located at 16015 Baker Canyon Road, Canyon Country, California (the Baker property petition).

As of 2021, several petitions remained pending before the probate court in addition to the Baker property and liquidation petitions. The court chose to prioritize ruling on the liquidation petition and the Baker property petition. Specifically, in a May 25, 2021 minute order, the court continued several matters then pending, including appellants' reinstatement request, but set the liquidation petition for trial.[8] In a July 19, 2021 minute order, the court set the Baker property petition for trial as well. In their trial briefing on these petitions, appellants argued, inter alia, that "any permanent transactions affecting the assets of the [t]rust"—such as those proposed by the petitions set for trial— "should be put on hold pending the outcome of the [reinstatement request]," noting that appellants had been suspended, not removed, and that no grounds for their removal existed.

Following trial, on April 13, 2022 and April 25, 2022, respectively, the court granted the Baker property petition and granted in part the liquidation petition. The court denied the liquidation petition to the extent it requested respondent make any "distributions of the net proceeds to the beneficiaries," which the court expressly prohibited "pending further court order." (Capitalization omitted.)

---

[8] The court also set for trial the 2015 section 850 petition (in which Annemarie and Lisa allege appellants, while acting as trustees, violated their fiduciary duties to the trust). As noted, however, the court ultimately dismissed the petition for failure to timely prosecute.

In June 2022, appellants timely appealed both the Baker property order and the liquidation order.[9]

### E.  *Postappeal Developments*

On May 24, 2024, pursuant to section 1310, subdivision (b), respondent filed an ex parte application in the probate court seeking authorization to sell the Baker property, despite the pending appeal from the Baker property order.  "Notwithstanding that an appeal is taken from the judgment or order, for the purpose of preventing injury or loss to a person or property, the trial court may direct the exercise of the powers of the fiduciary, . . . to exercise the powers, from time to time, as if no appeal were pending.  All acts of the fiduciary pursuant to the directions of the court made under this subdivision are valid, irrespective of the result of the appeal."  (§ 1310, subd. (b).)  After receiving briefing from respondent and appellants, the court approved the petition and issued an order "authoriz[ing] and direct[ing]" respondent to sell the Baker property, "subject to court confirmation" and "notwithstanding the [instant] appeal."  (Capitalization omitted)  According to appellants,

---

[9] In a separate appeal (case No. B323043), Matthew Donkin, one of the trustors' grandchildren, also challenged the liquidation order and Baker property order, arguing that the grandchildren did not receive the notice of trust proceedings to which due process entitled them.  Matthew also attempted to challenge respondent's appointment as interim trustee in his appeal.  In a May 2024 decision, we rejected these arguments and affirmed.  Appellants do not raise any issues related to notice in the instant appeal, nor do they challenge respondent's appointment as interim trustee.

respondent has not, however, sold the Baker property. Respondent does not challenge this assertion.

Appellants challenge this section 1310, subdivision (b) order in a separate appeal.

## DISCUSSION

"The probate court has wide discretion to make any order and take any action necessary or proper to dispose of matters presented by a petition under section 17200. (§ 17206.) The applicable standard of review is therefore abuse of discretion." (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1258.) Some of the issues appellants raise, however, depend on constitutional questions or "turn[ ] on interpretation of the trust, which [are] question[s] of law we review de novo." (*Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1072, capitalization omitted.)

### A. *Mootness*

Respondent argues this appeal is moot to the extent it challenges the order on the Baker property, because the court has since authorized respondent to sell the property notwithstanding this appeal. Unless the property has been sold, and the parties apparently agree that it has not been sold, we can still grant appellants effective relief from the Baker property order. Accordingly, the appeal is not moot. (See *In re D.P.* (2023) 14 Cal.5th 266, 277 ["case is not moot where a court can provide the plaintiff with ' "effect[ive] relief" ' "].)

### B. *Authority of Court to Grant Liquidation and Baker Property Petitions*

Appellants argue that "the probate court exceed[ed] its authority by ordering the liquidation of [t]rust assets, including

10

the sale of the Baker Canyon property, despite the discretionary powers granted to the [appellants] under the . . . [trust], which provided them with sole and absolute discretion over asset retention and distribution."

In making this and other arguments, appellants refer to the trust as granting certain powers to appellants and placing certain matters in their sole discretion. But the language in the trust on which they rely in making these arguments grants powers and discretion to "the trustee"—not appellants personally. The trust expressly contemplates options for who may serve as trustee—including but not limited to appellants—and further clarifies that references to "trustee" therein "shall apply equally to the trustee named [therein] and to any successor or substitute trustee acting hereunder, and such successor or substitute trustee shall possess all the rights, powers and duties, authority and responsibility conferred upon the trustee originally named herein." (Capitalization omitted.) It is thus not inconsistent with the terms of the trust that, at a time when appellants were not acting trustees, the court did not permit them to exercise the powers or discretion entrusted to a trustee. *Trolan v. Trolan* (2019) 31 Cal.App.5th 939, which appellants cite in arguing to the contrary, is inapposite. In that case, "the trial court erred when it ordered liquidation of the trust assets to accomplish [the trust] purpose, *rather than deferring to the discretion of the trustees to distribute the trust*." (*Id.* at p. 943, italics added.) Here, by contrast, appellants argue the court should have deferred to *their* discretion—even though they were not trustees.

It was not outside the scope of the court's authority to provide requested instructions on how respondent, as acting interim trustee, should exercise the powers the trust gives her

11

by virtue of that role.  (See § 17200, subds. (a), (b), (b)(5) & (b)(6) ["trustee or beneficiary of a trust may petition the court . . . concerning the internal affairs of the trust . . . [¶] . . . includ[ing] but . . . not limited to . . . [¶] . . . [¶] . . . passing upon the acts of the trustee, including the exercise of discretionary powers" and "[i]nstructing the trustee"].)  In arguing to the contrary, appellants characterize respondent's interim trusteeship as "confined to maintaining the status quo, preserving [t]rust assets without making permanent or strategic decisions, pending the outcome of the [reinstatement request and related] accounting," and argue she did not, therefore, possess all the powers the trust bestows on the trustee.  No such limitations on respondent's interim trusteeship exist.  Although the court initially appointed respondent as interim trustee solely for the purpose of specific transactions, soon thereafter, the court issued another order appointing her interim trustee *without* any such restrictions.

Appellants cite no authority—nor are aware of any— suggesting the power of an interim trustee is necessarily less than that of a trustee, absent some specific restrictions in either the order appointing the interim trustee or the trust.  To the contrary, although a trustee's "appointment [may be] of 'interim' *duration*[,] [t]here is no provision for a lesser trustee under the probate code."  (*Estate of Joslyn* (1967) 256 Cal.App.2d 671, 676-677, italics added; see *id.* at p. 676 ["[t]he contention . . . that the 'interim trustee,' if properly appointed, would be something less than a 'successor trustee' in this case is without merit"]; *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 425, fn. 5 ["[f]or purposes of this case, we see no distinction between a 'successor trustee' and a successor trustee whose appointment was of 'interim' power or duration, until a full hearing is held"].)

12

Accordingly, the court did not exceed its authority by instructing respondent, a court-appointed professional fiduciary acting as trustee (albeit only for an interim duration), on how to exercise the broad discretionary authority the trust gives the trustee.

### C. *Due Process and the Court's Decision to Hear the Liquidation and Baker Petitions Before Appellants' Reinstatement Request*

Appellants contend that the court "violate[d] [their] . . . due process rights by prioritizing the [liquidation] [p]etition and [Baker property] [p]etition over . . . [their reinstatement request], thereby denying [appellants] the opportunity to fully exercise their duties as designated by the settlors." They argue that, because their suspension spanned many years, during which the court has repeatedly continued the hearing on their reinstatement request, they were not merely suspended, but effectively removed as trustees without a removal hearing.

Appellants further claim "[t]he court's failure to hold a hearing or address *the accounting petition* [*i.e., the reinstatement request*] violates the [appellants'] due process rights, undermines the fundamental principle of honoring the [s]ettlors' intent, and unjustly prevents the [appellants] from executing their appointed duties." (Italics added.) But appellants have not sought review of the court's orders continuing the hearing on their reinstatement request or suspending them as trustees in this or any other appeal or writ proceeding; the Baker property order and liquidation order are the only rulings within the scope of this appeal.

Appellants are arguing that the court's decision to continue the reinstatement request affected the outcome of the liquidation

13

and Baker property petitions.  Even if this is true, we cannot reach outside the scope of our jurisdiction simply because a ruling appellants have *not* appealed from may have had some effect on the rulings appellants have appealed from.  Thus, we need not address appellants' due process arguments regarding their reinstatement request and/or their suspension as trustees, because these arguments do not provide a basis for reversing the orders on appeal.

### D.    *No-Contest Clause*

Appellants argue that "the probate court err[ed] in failing to enforce the [t]rust's no-contest clause against Annemarie's [liquidation] [p]etition."

A "no contest clause in a trust instrument, 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' " (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422 (*Donkin*).)

It is unclear whether, under current law, the no contest clauses in the trust are enforceable.[10]  We need not decide this

_____

[10] Under current law, "no contest clause shall only be enforced against" certain statutorily enumerated types of requests, none of which are present here.  (§ 21311, subd. (a).) "[A] party may be able to qualify for a fairness exception (§ 3, subd. (h)) to the presumptive applicability of the current law to instruments that became irrevocable after January 1, 2001, if application of the former law would compel a different conclusion as to enforceability of a no contest clause and it is established that the trustor(s) of the trust instrument drafted the no contest clause in reliance on the former law." (*Donkin, supra,* 58 Cal.4th at p. 416.)

issue, however, because we conclude that the liquidation petition does not contain or reflect a "contest" and thus would not run afoul of the no-contest clauses under either the old or new law.  In determining whether an action constitutes a contest, "the effect of the beneficiary's proposed action—not form, is controlling." (*Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1608, italics omitted.)  Thus, a beneficiary indirectly contests a trust "by seeking relief inconsistent with its terms." (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 605.)  Appellants argue the relief Annemarie sought via the liquidation petition was inconsistent with the terms of the trust in that court-ordered liquidation is "expressly prohibited by the [s]ettlors' directives." Appellants point to language in the trust placing it in the trustee's sole discretion to decide whether to liquidate the trust and in what form to make distributions.  Appellants further note that the liquidation petition proposes a specific allocation of some liquidated funds as between the beneficiaries, which appellants contend is inconsistent with the trust providing for a specific allocation of certain property and entrusting the allocation of the remainder to the trustee's discretion.

The fundamental flaw in appellants' argument is that, as discussed above, the discretion the trust vests in the trustee to decide whether and how to liquidate trust property applies to the *interim* trustee as well—that is, to respondent.  Nothing in the record suggests the court limited that discretion in appointing her interim trustee.  As a court-appointed professional trustee, respondent was regularly seeking (and receiving) input from the court before exercising that discretion.  The liquidation petition suggested a way in which the interim trustee might exercise her discretion to liquidate the trust property, and how

15

to distribute trust assets *after* completing all distributions the trust specifically requires.  Thus, none of the proposals it contained are inconsistent with the trust's specific required distributions or allocations.  The liquidation petition did not seek relief inconsistent with the trust terms and it is not a "contest."

### E.    *Fiduciary Duties of Respondent*

Finally, appellants argue that respondent breached her fiduciary duties to the trust in various ways  Having failed to argue below that respondent breached her fiduciary duties in these (or any other) ways, we need not and do not consider the argument on appeal.

## DISPOSITION

The orders are affirmed.  Respondent shall recover costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



WEINGART, J.

16